UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:                                                    Case No.  3:11-bk-02409-PMG

DURGAMA, INC.,                                            Chapter 11

         Debtor.

_____/

## FIRST SOUTHERN BANK'S OBJECTION TO THE DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL NUNC PRO TUNC

First Southern Bank, as assignee of the FDIC as Receiver for Haven Trust Bank Florida ("First Southern"), by and through its undersigned attorneys, hereby files this objection (the "Objection") to the Motion for Authority to Use Cash Collateral Nunc Pro Tunc (the "Motion") (D.E. 20) filed by Durgama, Inc., d/b/a Holiday Inn – Baymeadows (the "Debtor"), and in support thereof, states as follows:

1.      On April 1, 2011 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business as a debtor-in-possession.

2.      This Court has jurisdiction of the parties and the subject matter pursuant to 11 U.S.C. § 101, *et seq*. and 28 U.S.C. §§ 1334(b) and 157(b)(2)(G).

### Preliminary Statement

3.      In November 2008, Haven Trust and the Debtor entered into two loans in connection with the Debtor's financing of the Holiday Inn located at 9150 Baymeadows Road, Jacksonville, Florida 32256 (the "Hotel"). To secure its obligations to Haven Trust, the Debtor granted to Haven Trust security interests in and liens upon certain real and personal property, including but not limited to all rents, issues, revenues, and profits generated by the operation of the Hotel. Notwithstanding that the Debtor has continued to operate the Hotel and collect the

revenue therefrom, the Debtor has been in default on its obligations to First Southern since August 2010, including but not limited to failing to make all required payments of principal and/or interest when due.

4.      As a result of the Debtor's material breaches of the underlying loan documents, among other things, First Southern sought to foreclose its interest in the Hotel (including all real and personal property upon which it has perfected first priority liens) in state court and to appoint a receiver in order to marshal and preserve First Southern's cash collateral.  After First Southern filed its state court foreclosure complaint, the Debtor filed this Chapter 11 case.

<u>Background</u>

**A.      <u>Note 1</u>**

5.      On November 14, 2008, the Debtor executed that certain Renewal Promissory Note to Haven Trust Bank Florida ("Haven Trust") in the original principal amount of Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) (the "Renewal Note 1").  A true and correct copy of the Renewal Note 1 is attached hereto as Exhibit "A."

6.      The loan is further evidenced by, and administered in accordance with, the terms of that certain Loan Agreement dated November 14, 2008, by and between the Debtor, Narendra Patel, Jyotsna Patel and Haven Trust (the "Loan Agreement").  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "B."

7.      First Southern is the owner and holder of Renewal Note 1 and the Loan Agreement by virtue of that certain Assignment of Notes, Mortgage and Loan Documents dated as of September 24, 2010 and recorded in Official Records Book 15427, page 1439, <u>et seq.</u>, of the current public records of Duval County (the "Haven Trust Assignment").  In conjunction with the Haven Trust Assignment, Renewal Note 1 has been endorsed to First Southern by virtue

of that certain Allonge dated as of September 24, 2010 (the "Haven Trust Allonge 1"). The Haven Trust Assignment and the Haven Trust Allonge 1 shall be collectively referred to herein as the "Renewal Note 1 Haven Trust Assignment Documents". True and correct copies of the Renewal Note 1 Haven Trust Assignment Documents are attached hereto as Composite Exhibit "C."

8.      Under the terms of Renewal Note 1, monthly payments of principal and accrued interest were due and payable on the 14th day of each month beginning on December 14, 2008, and continuing on the 14th day of each successive month thereafter until the maturity date of November 14, 2011, upon which date the entire unpaid balance of principal and accrued interest was to be due and payable.

9.      The Debtor defaulted under Renewal Note 1 by failing to make the monthly payment due on August 14, 2010 on or before August 24, 2010, or any payment due thereafter. Renewal Note 1 was in default before the Debtor's voluntary petition under Chapter 11 was filed.

10.     First Southern has declared the entire indebtedness evidenced by Renewal Note 1 due and payable.

11.     As of the Petition Date, the Debtor owed to First Southern the approximate amount of $8,750,000.00, plus accrued interest, attorneys' fees and late charges under Renewal Note 1.

**B.      Note 2**

12.     On November 14, 2008, the Debtor executed that certain Renewal Promissory Note to Haven Trust in the original principal amount of Three Million Four Hundred Fifty

Thousand and 00/100 Dollars ($3,450,000.00) (the "Renewal Note 2"). A true and correct copy of Renewal Note 2 is attached hereto as Exhibit "D".

13.     The loan is further evidenced by, and administered in accordance with, the terms of the Loan Agreement attached as Exhibit "B."

14.     First Southern is the owner and holder of Renewal Note 2 by virtue of the Haven Trust Assignment. In conjunction with the Haven Trust Assignment, Renewal Note 2 has been endorsed to First Southern by virtue of that certain Allonge dated as of September 24, 2010 (the "Haven Trust Allonge 2"). The Haven Trust Assignment and the Haven Trust Allonge 2 shall be collectively referred to herein as the "Renewal Note 2 Haven Trust Assignment Documents". True and correct copies of the Renewal Note 2 Haven Trust Assignment Documents are attached hereto as Composite Exhibit "E".

15.     Under the terms of Renewal Note 2, monthly payments of principal and accrued interest were due and payable on the 14th day of each month beginning on December 14, 2009, and continuing on the 14th day of each successive month thereafter until the maturity date of November 14, 2011, upon which date the entire unpaid balance of principal and accrued interest was to be due and payable.

16.     The Debtor defaulted under Renewal Note 2 by failing to make the monthly payment due on August 14, 2010 on or before August 24, 2010, or any payment due thereafter. Renewal Note 2 was in default before the Debtor's voluntary petition under Chapter 11 was filed.

17.     First Southern has declared the entire indebtedness evidenced by Renewal Note 2 due and payable.

18.     As of the Petition Date, the Debtor owed to First Southern the approximate amount of $3,322,296.40, plus accrued interest, attorneys' fees and late charges under Renewal Note 2.

## C.     The Mortgage

19.     In order to secure the indebtedness evidenced by Renewal Note 1 and Renewal Note 2, the Debtor and Shree-Shivji, LLC, a Florida limited liability company ("Shree-Shivji"), executed and delivered to Haven Trust that certain Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement dated November 14, 2008 in favor of Haven Trust(the "Amended and Restated Mortgage"), which mortgaged the real property located in Duval County more particularly described in Exhibit "F" (the "Real Property"), and which was recorded in Official Records Book 14699, page 1484 of the current public records of Duval County, Florida.  A true and correct copy of the Amended and Restated Mortgage is attached hereto as Exhibit "G."

20.     The Amended and Restated Mortgage also encumbered certain articles of personal property owned by the Debtor, including, but not limited to, machinery, apparatus, equipment, fittings, fixtures, and proceeds, as more particularly described in the Amended and Restated Mortgage (collectively, the "Personal Property").  Additionally, the Amended and Restated Mortgage encumbered, among other things, all of the Debtor's right, title, and interest in present and future leases, rents, income and profits from the Real Property, as more particularly described in the Amended and Restated Mortgage (collectively, the "Rents").

21.     In order to secure the indebtedness evidenced by Renewal Note 1 and Renewal Note 2, the Debtor and Shree-Shivji executed and delivered to Haven Trust that certain Amended and Restated Conditional Assignment of Rents, Leases and Revenues dated November 14, 2008

and recorded in Official Records Book 14699, page 1511 of the current public records of Duval County, Florida (the "Amended and Restated Assignment of Rents"). A true and correct copy of the Amended and Restated Assignment of Rents is attached hereto as Exhibit "H". The Amended and Restated Assignment of Rents assigned, among other things, all of the Debtor's right, title and interest in the Rents.

22. In order to further secure Renewal Note 1 and Renewal Note 2, Haven Trust filed a Uniform Commercial Code Financing Statement with the Florida Secured Transaction Registry under File No. 200809555822 (the "Financing Statement") to perfect its security interest in the in the Real Property, Personal Property and Rents (the "Mortgaged Property"). A true and correct copy of the Haven Trust Financing Statement is attached hereto as Exhibit "I".

23. First Southern is the owner and holder of the Amended and Restated Mortgage, the Amended and Restated Assignment of Rents and the Financing Statement by virtue of the Haven Trust Assignment.

24. Renewal Note 1, the Loan Agreement, Renewal Note 1 Haven Trust Assignment Documents, Renewal Note 2, Renewal Note 2 Haven Trust Assignment Documents, the Amended and Restated Mortgage, the Amended and Restated Assignment of Rents and the Financing Statement are collectively referred to as the "Loan Documents."

## ARGUMENT

### A.    The Debtor Cannot Demonstrate that First Southern is Adequately Protected

25. The Real Property is producing rents, issues, revenues and profits in which First Southern holds a perfected first position security interest pursuant to the Loan Documents. These rents, issues, revenues and profits (a/k/a the Rents) constitute the cash collateral of First

Southern under section 363(a) of the Bankruptcy Code ("First Southern's Cash Collateral").

Section 363(c)(2) of the Bankruptcy Code provides, in part:

> The [debtor in possession] may not use, sell or lease cash collateral under paragraph (1) of this subsection unless —
>     (A)    each entity that has an interest in such cash collateral consents; or
>     (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

Under section 363(c), the Debtor may obtain court approval to use cash collateral only upon showing that First Southern's property interest in the cash collateral is "adequately protected." If the Debtor cannot offer such adequate protection, it must be prohibited from using the cash collateral absent First Southern's consent. *See* 11 U.S.C. § 363(c)(2)(A).

26.    It is mandatory that a debtor provide adequate protection of a secured lender's interest in cash collateral. *See* 11 U.S.C. § 363(e) ("[A]t any time . . . the court, with or without a hearing, *shall* prohibit or condition such use . . . as is necessary to provide adequate protection of such interest").

27.    Section 361 of the Bankruptcy Code provides:

> When adequate protection is required under Section . . . 363 . . . of this title of an interest of an entity in property, such adequate protection may be provided by:
>     (1)    requiring the [debtor in possession] to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use, sale or lease under Section 363 of this title . . . results in a decrease of the value of such entity's interest in such property;
>     (2)    providing to such entity an additional or replacement lien to the extent such . . . use, sale [or] lease . . . results in a decrease of the value of such entity's interest in such property; or
>     (3)    grant such other relief, other than entitling such entity to compensation allowable under Section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. Thus, to use First Southern's Cash Collateral the Debtor must make compensatory payments to First Southern, provide additional or replacement liens, and/or provide First Southern with the indubitable equivalent of its interest in the collateral. Furthermore, such adequate protection must fully and adequately compensate First Southern for the diminution in its collateral that will result from the Debtor's use.

28.     The Debtor bears the burden of proof on adequate protection for the use of cash collateral. *See In re Windsor Hotel, LLC*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003). "The standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one." *In re Berens*, 41 B.R. 524, 528 (Bankr. D. Minn. 1984).

29.     The reasoning is simple, "if the debtor is allowed to use the cash collateral, the creditor's security – the collateral – is gone. No longer does the secured party have the asset it originally bargained for as collateral available to it." *Id.* at 527.

30.     A Debtor must provide more than mere speculation regarding the adequate protection being offered. "A finding of adequate protection should be premised on facts, or on projections grounded on a firm evidentiary basis." *In re Campbell Sod, Inc.*, 378 B.R. 647, 653 (Bankr. D. Kan. 2007); *First Bank of Miller v. Wieseler*, 45 B.R. 871, 876 (D.S.D. 1985)(finding that the debtors "must go beyond simply estimating what they hope they can harvest and what they hope the market will bring for it").

31.     On April 8, 2011, First Southern provided notice to the Debtor that First Southern does not consent to the Debtor's use of First Southern's Cash Collateral and demanded that First Southern's Cash Collateral be sequestered and set aside pending either First Southern's consent to its use or the entry of an order by the Court authorizing use of same.

32.     In the absence of debt service payments, First Southern's position worsens as this case progresses.  As a result of the Debtor's continued use of First Southern's Cash Collateral without the consent of First Southern, court order or any semblance of adequate protection of First Southern's interests, First Southern is sustaining direct and substantial harm and injury and is in immediate jeopardy of losing the full and adequate protection of its interest in First Southern's Cash Collateral and its security.

33.     Simply "needing" the use of cash collateral for continued operations is not a sufficient basis for allowing the Debtor to use First Southern's Cash Collateral.  *See In re McCutchen,* 115 B.R. 126, 133 (Bankr. W.D. Tenn. 1990) (denying use of cash collateral because a "mere need does not satisfy the requirements of sections 361 and 363"); *see also In re Goode,* 235 B.R. 584, 590 (Bankr. E.D. Tenn. 1999) (holding that a debtor's needs for cash collateral cannot trump the right of a secured creditor to adequate protection).

34.     The Debtor's budget attached the Motion proposes adequate protection of (a) paying net operating income to Pinnacle Bank; and (b) providing post-petition liens on its collateral to the same extent, validity and priority as existed pre-petition.  This proposed "adequate protection" is wholly inadequate.

35.     First, First Southern, not Pinnacle Bank, is the holder of the Loan Documents, and has a first position mortgage and security interest on the Mortgage Property.  Second, the Debtor does not have sufficient income to adequately protect First Southern.  The monthly interest-only payments due under Note 1 are approximately $47,500.  The monthly payments due under Note 2 are in the range of $37,000 to $44,000.  According to the Debtor's Budget attached as Exhibit "A" to the Motion, the Debtor's average monthly gross revenues for April through December 2011 is as follows:

Hotel:

| Average gross revenue: | .$141,184.33 |
|---|---|
| Average monthly expenses: | $131,237.89 |
| Net: | $9,946.44 |

Restaurant:

| Average gross revenue: | $16,048.00 |
|---|---|
| Average monthly expenses: | $28,538.22 |
| Net: | <$12,310.22> |

Banquet:

| Average gross revenue: | $43,618.44 |
|---|---|
| Average monthly expenses: | $36,890.22 |
| Net: | $6,728.22 |

It is clear from the above that the Debtor cannot adequately protect First Southern for the Debtor's use of First Southern's Cash Collateral.

36.     In sum, the Mortgaged Property does not have a proven record of steady income, as demonstrated by the Debtor's failure to service its debt obligations to First Southern. Thus, the Debtor has not, and can not, meet its burden to support the use of Cash Collateral as proposed in its motion.

**B.      Any Use by the Debtor of Post-Petition Cash Collateral Must Be Limited**

37.     To the extent that the Court grants the Debtor authority to use the Cash Collateral on an interim basis, First Southern submits that:  (i) First Southern should be granted adequate protection in the form of (a) periodic monthly cash payments of principal and default rate interest due under the terms of the Loan Documents and (b) superpriority claims and replacement liens; (ii) any use of Cash Collateral should be strictly limited to a budget agreed to by First Southern and approved by the Court; (iii) the Debtor be required to obtain, and to provide evidence of same to First Southern, a full coverage, non-forced, insurance policy for the Hotel and the Mortgaged Property (including liability coverage) as required by the Loan Documents; (iv) the Debtor be required to provide First Southern and file with the Court *weekly* reports of income,

JAX\1513623_1                                          -10-

disbursements and debts incurred and unpaid on each and every Wednesday for the weekly period ending on the previous Friday; (v) the Debtor be required to account for all of First Southern's Cash Collateral that has come into its possession and any use the Debtor has made of First Southern's Cash Collateral since August 2010 (date of default); and (vi) First Southern be authorized, at the Debtor's expense, to enter the Hotel and Real Property for the purposes of performing a professional and thorough inspection and appraisal of the premises.

## RESERVATION OF RIGHTS

38.    Consistent with the foregoing, First Southern expressly reserves, and does not waive, any and all of its rights, claims and/or defenses under the Loan Documents. Specifically, First Southern reserves the right to (i) oppose any additional use by the Debtor of Cash Collateral sought at any other interim or final hearings on the motion, including on the grounds that First Southern's interests are not being adequately protected, and (ii) dispute any valuation of the Hotel and Mortgaged Property submitted or relied upon by the Debtor.

## Conclusion

WHEREFORE, First Southern respectfully requests (i) that the Court deny the Debtor's Motion for Authority to Use Cash Collateral Nunc Pro Tunc or, in the alternative, (ii) that any order entered by the Court condition the Debtor' use of Cash Collateral on terms consistent with those set forth in this Objection.

Dated: April 8, 2011.

**ROGERS TOWERS, P.A.**

*s/ J. Ellsworth Summers, Jr.*
J. Ellsworth Summers, Jr.
Florida Bar No.: 0015769
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
jes@rtlaw.com (email)

Attorney for First Southern Bank

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFIY that a copy of the foregoing has been furnished on this 8th day of April, 2011 either by electronic transmission or by United States first class mail postage prepaid to the following: **the Debtor:** Durgama, Inc., c/o Jyotsna Patel, 1300 N. Ponce De Leon Blvd., St. Augustine, FL 32084; **Counsel for Debtor:** Buddy D. Ford,115 N. MacDill Avenue, Tampa, FL 33609-1521; and **U.S. Trustee:** Timothy S Laffredi, United States Trustee JAX, 135 W. Central Boulevard, Suite 620, Orlando, Florida 32801.

*/s/ J. Ellsworth Summers, Jr.*
Attorney