## Exhibit "A"
### (Renewal Note 1)

RENEWAL PROMISSORY NOTE

$8,750,000.00

Jacksonville, Florida
November 14, 2008

FOR VALUE RECEIVED, the undersigned DURGAMA, INC., a Florida corporation ("Borrower"), jointly and severally, if more than one, promise(s) to pay to the order of HAVEN TRUST BANK FLORIDA, a Florida banking corporation (hereinafter called "Lender", which term shall include any subsequent holder hereof), at 212 Ponte Vedra Park Drive, Ponte Vedra Beach, Florida 32082 or at such other place as Lender may designate in writing from time to time in legal tender of the United States of America, the principal sum of Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) or so much thereof as may be advanced hereunder or under any loan agreement, together with interest on the unpaid balance outstanding at the rate provided below.

INTEREST. Interest accruing on the principal balance outstanding under this Promissory Note at the rate of six and one-half of one percent (6.50%) per annum and shall be calculated on the basis of a 360 day year for the actual number of days elapsed.

PAYMENTS. Principal and interest shall become due and payable on the dates and in the manner as follows:

1. Interest only on the amount of the unpaid principal balance shall be due and payable monthly, commencing on the 14th day of December, 2008, and continuing on the same day of each successive month thereafter ensuing until November 14, 2011 (the "Maturity Date").

2. The entire unpaid principal balance, together with any accrued and unpaid interest, is due and payable on the Maturity Date.

TIME IS OF THE ESSENCE. TIME IS OF THE ESSENCE of this Promissory Note.

APPLICATION OF PAYMENTS. Except as otherwise specified herein, each payment or prepayment, if any, made under this Promissory Note shall be applied to pay late charges, accrued and unpaid interest, principal, escrows (if any), and any other fees, costs and expenses which Borrower is obligated to pay under this Promissory Note, in such order as Lender may elect from time to time in its sole discretion.

TENDER OF PAYMENT. All payments on this Promissory Note are payable on or before 2:00 p.m. on the due date thereof, at the office of Lender specified above and shall be credited on the date the funds become available in lawful money of the United States. All sums payable to Lender that are due on a day on which Lender is not open for business shall be paid on the next succeeding business day and such extended time shall be included in the computation of interest.

PREPAYMENTS. Privilege is hereby reserved to prepay the principal payable under this Promissory Note in whole or in part without penalty; provided that any prepayments shall be

applied against principal then last to become due under this Promissory Note. Prepayment in part shall not affect, vary or postpone the duty of the Borrower to pay all obligations when due, and it shall not affect or impair the right of the Lender to pursue all remedies available to it hereunder or under the "Loan Documents"(as that term is hereinafter defined).

RENEWAL OF PRIOR NOTE. This Promissory Note is given to renew: (a) that certain Promissory Note dated September 15, 2005, executed and delivered by Borrower to Prior Lender in the original principal amount of Two Million Two Hundred Thirty Five Thousand and 00/100 Dollars ($2,235,000.00) ("Note 1"); and (b) a portion of that certain Consolidating Renewal Promissory Note dated December 5, 2006, executed and delivered by Borrower to Prior Lender in the original principal amount of Seven Million One Hundred Thousand and 00/100 Dollars ($7,100,000.00) ("Note 2"; Note 1 and Note 2 are hereinafter collectively referred to as the "Prior Note"). This Promissory Note evidences a portion of the original indebtedness evidenced by the Prior Note and does not include any accumulated interest on the Prior Note. This Promissory Note is intended to comply with the requirements of 201.09, Florida Statutes, and is intended to be exempt from documentary stamp taxation hereunder.

LOAN DOCUMENTS. This Promissory Note is secured by: (i) that certain Mortgage and Security Agreement, dated September 15, 2005, and recorded in Official Records Book 12787, page 1620, of the current public records of Duval County, Florida ("Mortgage 1"); and (ii) that certain Mortgage and Security Agreement, dated June 21, 2006, and recorded in Official Records Book 13678, page 1873, as modified by that certain Mortgage Modification Spreading Agreement and Receipt for Future Advance, dated December 5, 2006, and recorded in Official Records Book 13693, page 1775, both of the current public records of Duval County, Florida (collectively "Mortgage 2"), which Mortgage 1 and Mortgage 2 are amended, consolidated and restated by that certain Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement, dated as of even date herewith, granted by the Borrower and Shree-Shiviji, LLC ("Shree") in favor of the Lender and encumbering certain real property of the Borrower and Shree located in Duval County, Florida (hereinafter collectively referred to as the "Mortgage"). This Promissory Note, the Mortgage, that certain Loan Agreement dated of even date herewith and all other documents evidencing and securing the loan evidenced by this Promissory Note shall be hereinafter referred to as the "Loan Documents."

LATE FEE. The Borrower shall pay a late fee of five cents on each dollar ($1.00) on any monthly installment which is delinquent for more than fifteen (15) days. The agreement to pay a late fee shall not be construed to give rise to a grace period or in any way extend or alter the due dates of payments under this Promissory Note.

DEFAULT AND DEFAULT INTEREST. Any payment of principal or interest under this Promissory Note which is not paid within fifteen (15) days after it becomes due, shall bear interest at a rate per annum equal to the lesser of: (i) eighteen percent (18%) per annum, or (ii) the highest rate of interest allowed by law (hereinafter referred to in this Promissory Note and in the Loan Documents as the "Default Rate") until paid. The Lender shall have the right to declare the total unpaid principal balance, together with all accrued interest, immediately due and payable upon: (i) the failure of the Borrower to pay any payment due hereunder within ten (10) days after its due date; or (ii) upon the occurrence of any event of default under the terms of the

Loan Documents if such default continues after the expiration of all applicable notice and cure periods. Upon exercise of this option by the Lender, the entire unpaid principal shall bear interest at the Default Rate until paid. Forbearance to exercise this right with respect to any default by the Borrower shall not constitute a waiver of the right as to any subsequent default. Exercise of this right shall be without notice to the Borrower, notice of such exercise being hereby expressly waived.

PAYMENT OF COSTS. Borrower covenants and agrees to pay all costs, taxes, fees, and expenses of every kind and nature, including the Lender's reasonable attorneys' fees and paralegal fees (including on appeal and in bankruptcy), documentary stamp taxes, intangible taxes and other excise taxes, and the cost of title evidence, incurred or expended at any time by the Lender in the collection of the loan evidenced hereby and/or foreclosure of the Mortgage or otherwise incurred in protecting and preserving the lien of the Mortgage or in enforcing Lender's rights and remedies under the Loan Documents. Every such payment made by or on behalf of the Lender shall be immediately due and payable by the Borrower to the Lender and shall bear interest from the date of disbursement by the Lender at the Default Rate and the same, together with such interest, shall be secured by the lien of the Mortgage. Nothing contained in this paragraph shall be construed as requiring the Lender to advance or spend money for any of the purposes mentioned in this paragraph.

WAIVERS AND CONSENTS. The Borrower, for itself and its successors and assigns, hereby expressly waives presentment, demand for payment, notice of dishonor, protest, notice of non-payment, and diligence in collection. Borrower consents that the time of all payments or any part thereof may be extended, rearranged, renewed or postponed by the Lender, and further consents that all or any portion of the collateral securing the repayment of this Promissory Note may be released, exchanged, added to or substituted by the Lender, without in anyway modifying, altering, releasing, affecting, or limiting the Borrower's liability or any lien or security interest granted the Lender pursuant to the Loan Documents. Borrower agrees that the Lender shall not be required first to institute any suit or to exhaust any of its remedies against the Borrower or any other person or party liable hereunder in order to enforce payment of this Promissory Note.

CHOICE OF LAW. This Promissory Note is to be construed and enforced according to the laws of the State of Florida.

LIMITATION OF INTEREST. All agreements between the Borrower and the Lender are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the Lender for the use, forbearance, or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable. If, from any circumstances whatsoever, fulfillment of any provision of this Promissory Note or any provision of the Loan Documents, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable thereto, then ipso facto, the obligation to be fulfilled shall be reduced to the maximum limit of such validity, and if for any circumstances whatsoever the

Lender shall ever receive interest, the amount of which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance remaining unpaid hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the Borrower and the Lender.

CROSS DEFAULT/CROSS-COLLATERALIZATION. Lender has also made a loan to Borrower's affiliate, Jai Ambaji Corporation, a Delaware corporation ("Jai Ambaji"), in the original principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) (the "Additional Loan"), which is secured by that certain Amended and Restated Leasehold Mortgage and Security Agreement, dated of even date herewith and recorded simultaneously herewith in the public records of St. Johns County, Florida (the "Additional Mortgage"), encumbering certain real property located at 2550 State Road 16, St. Augustine, Florida 32092. The Additional Loan is evidenced by that certain Renewal Promissory Note Including Future Advance in favor of Lender in the original principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) (the "Additional Note"). In addition to securing the payment and performance by the Borrower of the Borrower's obligations under the Loan Documents, the Mortgage shall also secure the repayment by Jai Ambaji of all principal, interest and other sums due by Jai Ambaji to Lender pursuant to the terms of the Additional Note, and the Additional Mortgage shall also secure the repayment by Borrower of all principal, interest and others sums due by Borrower to Lender pursuant to the terms of the Loan Documents. Furthermore, should Jai Ambaji default in the performance of its obligations under the Additional Note, then such default shall be considered a default by the Borrower under the terms of this Promissory Note and the Mortgage, and should the Borrower default in the performance of its obligations under this Promissory Note, then such default shall be considered a default by Jai Ambaji under the terms of the Additional Note and Additional Mortgage.

WAIVER OF JURY TRIAL. AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN EVIDENCED HEREBY, LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS PROMISSORY NOTE, THE LOAN EVIDENCED HEREBY, ALL DOCUMENTS AND AGREEMENTS EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THE LOAN EVIDENCED HEREBY, AND ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

DURGAMA, INC., a Florida corporation

By: _____
Name: Narendra Patel
Title:  President

(CORPORATE SEAL)

The proper Florida Documentary Stamp Taxes were paid and affixed to the Mortgage.

JAX\1279974_1.DOC                                    -4-

## Exhibit "B"
### (Loan Agreement)

JAX\1470532_2

## LOAN AGREEMENT

THIS LOAN AGREEMENT (the "Agreement") is made and entered into as of the _14th_ day of November, 2008, by and among **HAVEN TRUST BANK FLORIDA**, a Florida banking corporation (the "Lender"), **DURGAMA, INC.**, a Florida corporation (hereinafter referred to as "Borrower"), and **NARENDRA PATEL** and **JYOTSNA PATEL** (hereinafter collectively referred to as the "Guarantor").

### RECITALS

Lender has made a loan to Borrower in the original principal amount of Twelve Million Two Hundred Thousand and 00/100 Dollars ($12,200,000.00) (hereinafter referred to as the "Loan"). The Loan is evidenced by: (a) that certain Renewal Promissory Note, dated as of even date herewith, in the original principal amount of Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) ("Note 1"); and (b) by that certain Renewal Promissory Note Including Future Advance, dated as of even date herewith, in the original principal amount of Three Million Four Hundred Fifty Thousand and 00/100 Dollars ($3,450,000.00) ("Note 2"), both executed and delivered by Borrower to Lender (Note 1 and Note 2 are hereinafter collectively referred to as "Note").

A. The Note is secured by that certain Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement, dated of even date herewith, granted by Borrower and **SHREE-SHIVIJI, LLC**, a Florida limited liability company ("Shree") to the Lender (hereinafter referred to as the "Mortgage") encumbering certain real property of Borrower and Shree located in Duval County, Florida (the "Property").

B. The Guarantor has guaranteed the payment of the Loan pursuant to that certain Guaranty Agreement, dated of even date herewith, executed and delivered by the Guarantor to the Lender (hereinafter referred to as the "Guaranty Agreement").

C. As a condition to the Lender making the Loan to the Borrower, the Lender has required the execution of this Agreement by the Borrower and Guarantor.

NOW, THEREFORE, in consideration for the making of the Loan by the Lender to the Borrower, the parties hereto do hereby covenant and agree as follows:

1. <u>Recitals.</u> The above recitals are true and correct and incorporated by reference herein.

2. <u>Financial Reporting.</u> In addition to such other financial information as may be required to be provided herein or in the Mortgage, Borrower shall furnish or cause to be furnished the following information:

    a. CPA prepared fiscal year end financial statements of the Borrower on an annual basis, within one hundred twenty (120) days from the Borrower's fiscal year end, such statements to be in a form acceptable to the Lender and certified as being true and correct by an officer of the Borrower;

b.   company prepared quarterly interim financial statement of the Borrower on a quarterly basis, within thirty (30) days from the Borrower's fiscal quarter end, such statements to be in a form acceptable to Lender and certified as being true and correct by an officer of the Borrower;

c.   updated financial statements of each Guarantor, certified to the Lender, on an annual basis, in a form satisfactory to Lender, on or before April 15 of each year;

d.   by April 15th of each year, complete copies of federal income tax returns for the Borrower and each Guarantor for the year in question, or an executed extension form if any such return has not yet filed (should an extension be filed, the Borrower or Guarantor shall deliver a copy of its federal income tax return within 30 days after filing);

e.   fiscal year end financial statements of the Borrower on an annual basis, within forty-five (45) days from the Borrower's fiscal year end, such statements to be in a form acceptable to the Lender and certified as being true and correct by an officer of the Borrower; and

f.   such other additional financial information as may be reasonably requested by Lender.

3.   Financial Covenants.

a.   Loan to Value Covenant. Borrower and Lender agree that the term "Loan to Value Ratio" shall mean the outstanding principal balance of the Loan at the time of determination of such Loan to Value Ratio divided by the then current fair market value of Borrower's interest in the Property, as determined by an appraisal issued by an appraiser chosen by Lender in Lender's sole discretion (an "Appraisal"). Borrower and Lender agree that the Loan to Value Ratio shall never be greater than Sixty Five Percent (65%). If an Appraisal determines that the Loan to Value Ratio is greater than 65%, then the Borrower shall make a principal payment to the Lender in an amount sufficient to reduce the Loan to Value Ratio to 65% or less. Such principal payment shall be due within ninety (90) days after Lender notifies the Borrower that such payment is due.

b.   Debt Service Coverage Ratio. During the term of the Note, the Borrower shall maintain a Debt Service Coverage Ratio of 1.15:1.0 or greater tested annually upon receipt of the Borrower's annual financial statements. As used herein, "Debt Service Coverage Ratio" shall mean the ratio of (A) Net Operating Income to (B) the sum of all principal and interest payments required to be made during the period. Notwithstanding the foregoing, Lender acknowledges that the current Debt Service Coverage Ratio is less than 1.15:1.00. If on the first anniversary of the date of this Agreement, the Borrower does not have a Debt Service Coverage Ratio of 1.15:1 or greater based upon the global NOI for the previous six (6) months, annualized for a full twelve (12) months, then the Lender will require the Borrower to make a principal payment under the Note in an amount which would be sufficient to bring the Borrower into compliance with the Debt Service Coverage Ratio requirement set forth in this paragraph, as determined by Lender in its reasonable direction. Such principal payment shall be due and payable within fifteen (15) days after written demand for such payment is delivered by Lender to Borrower.

JAX\1263825_3.DOC                                   -2-

4.    Partial Release of Parcel 1 From Mortgage.  Lender shall release, in accordance with the provisions hereinafter set forth, from the lien of the Mortgage, Parcel 1 of the Property, which is owned by Shree, at such time that the following conditions are satisfied:

a.    Lender's security, to secure the unpaid indebtedness evidenced by the Note, will not be impaired in the sole opinion of Lender.

b.    There is no default under this Agreement, the Note or Mortgage.

c.    There has been no material adverse change in the financial condition of the Borrower.

d.    Borrower shall have achieved the Debt Service Coverage Ratio set forth in Section 3(b) above as of the first anniversary of the date of this Agreement and thereafter.

e.    Access, ingress and egress and the availability of utility services to any unreleased portions of the mortgaged property remains acceptable to Lender in its sole opinion.

f.    Borrower shall have provided to Lender a certification from the appropriate governmental authorities that the remaining parking spaces on Parcel 3 are sufficient to support the operation of the hotel, restaurant, meeting space and any other ancillary use on the Parcel 3 property, without the need for parking easements across Parcel 1 or any other adjacent property, which certification shall be in form and content acceptable to Lender in its sole discretion.

g.    All costs of preparing and recording such partial release shall be paid by Borrower.

5.    Depository Relationship.  Throughout the term of the Loan, the Borrower and Guarantor shall maintain their current depository relationship with Lender.

6.    Default.  A default by Borrower under the terms of this Agreement shall be deemed a default under the Note and Mortgage.

7.    Waiver of Jury Trial.  AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, LENDER, BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT ANY PARTY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN AND ALL DOCUMENTS AND AGREEMENTS EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THE LOAN, OR WITH RESPECT TO ANY CLAIMS OR DEFENSES ALLEGED TO ARISE OUT OF THE COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.

*[Signatures contained on next page.]*

JAX\1263825_3

-3-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Signed, sealed, and delivered
in the presence of:

HAVEN TRUST BANK FLORIDA, a Florida
banking corporation

Name:

Name:    VICKI L. CROSS

By: _____
Name: Scott Gilpin
Title:    Vice President

DURGAMA, INC., a Florida corporation

Name:

Name:    VICKI L. CROSS

By: _____
Name: Narendra Patel
Title:    President

Name:

Name:    VICKI L. CROSS

NARENDRA PATEL

Name:

Name:    VICKI L. CROSS

JYOTSNA PATEL

## Composite Exhibit "C"
### (Renewal Note 1 Haven Trust Assignment Documents)

Doc # 2010264227, OR BK 15427   Page 1439,   Number Pages: 4,   Recorded 11/12/2010 at 02:09 PM, JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY RECORDING $35.50

RECORD & RETURN TO:
Laurie Hammerbacher, Esq.
212 Ponte Vedra Park Drive
Ponte Vedra Beach, FL 32082
Telephone: 904-281-8355
Facsimile: 904-302-7777

## ASSIGNMENT OF NOTES, MORTGAGE AND LOAN DOCUMENTS

THIS ASSIGNMENT OF NOTES, MORTGAGE AND LOAN DOCUMENTS (this "Assignment") is made effective as of the 24th day of September, 2010, by and between the FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF HAVEN TRUST BANK FLORIDA, PONTE VEDRA BEACH, FLORIDA, organized under the laws of the United States of America ("Assignor"), having an address of 7777 Baymeadows Way West, Jacksonville, Florida 32256, Attention: Settlement Agent, and FIRST SOUTHERN BANK ("Assignee") with an address of 900 North Federal Highway, Suite 300, Boca Raton, Florida 33432, Attention: Marsha M. Gassan:

WHEREAS, effective September 24, 2010, in accordance with Florida law and the Federal Deposit Insurance Act, 12 U.S.C §1821 *et. seq.* (the "Act"), the Florida Office of Financial Regulation closed the operations of Haven Trust Bank Florida ("Haven Trust"), and appointed the Assignor as the receiver of Haven Trust.

WHEREAS, in accordance with the Act, the Assignor is empowered to liquidate the assets of Haven Trust in order to wind down the affairs of Haven Trust.

WHEREAS, on or about September 24, 2010, in accordance with that certain Purchase and Assumption Agreement (Whole Bank, All Deposits) dated as of September 24, 2010 (the "Purchase Agreement"), by and among the Assignor, Assignee and the Federal Deposit Insurance Corporation ("FDIC"), the Assignor sold certain assets of Haven Trust to Assignee, including, but not limited to, the following loan documents and other rights:

A.    To (i) that certain Promissory Note dated September 15, 2005, executed and delivered by Durgama, Inc., a Florida corporation ("Durgama") to First Guaranty Bank and Trust Company of Jacksonville ("First Guaranty"), in the original principal amount of Two Million Two Hundred Thirty Five Thousand and 00/100 Dollars ($2,235,000.00), as assigned from First Guaranty to Haven Trust by that certain Assignment of Note, Mortgage and Loan Documents dated November 14, 2008 and recorded in Official Records Book 14699, page 1472 of the current public records of Duval County ("Assignment 1"), and (ii) a portion of that certain Consolidating Renewal Promissory Note dated December 5, 2006, executed and delivered by Durgama to First Guaranty in the original principal amount of Seven Million One Hundred Thousand and 00/100 Dollars ($7,100,000.00), as assigned from First Guaranty to Haven Trust by that certain Assignment of Note, Mortgage and Loan Documents dated November 14, 2008 and recorded in Official Records Book 14699, page 1478 of the current public records of Duval County ("Assignment 2"); and renewed, in part, by that certain Renewal Promissory Note dated November 14, 2008, executed and delivered by Durgama in favor of Haven Trust in the original principal amount of

Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) (collectively, "Note 1").

B.    To (i) that certain Promissory Note dated September 15, 2005, executed and delivered by Durgama to First Guaranty in the original principal amount of Two Million Two Hundred Thirty Five Thousand and 00/100 Dollars ($2,235,000.00), as assigned from First Guaranty to Haven Trust by the Assignment 1, and (ii) a portion of that certain Consolidating Renewal Promissory Note dated December 5, 2006, executed and delivered by Durgama to First Guaranty in the original principal amount of Seven Million One Hundred Thousand and 00/100 Dollars ($7,100,000.00), as assigned from First Guaranty to Haven Trust by the Assignment 2, and renewed, in part, by that certain Renewal Promissory Note Including Future Advance dated November 14, 2008 executed and delivered by Durgama in favor of Haven Trust in the original principal amount of Three Million Four Hundred Fifty Thousand and 00/100 Dollars ($3,450,000.00) (collectively, "Note 2").

C.    Note 1 and Note 2 shall be collectively referred to herein as the "Note".

D.    To (i) that certain Mortgage and Security Agreement granted by Durgama, as mortgagor, in favor of First Guaranty, as mortgagee, dated September 15, 2005, and recorded in Official Records Book 12787, page 1620, of the current public records of Duval County, Florida (collectively, the "Mortgage 1"), as assigned to Haven Trust by the Assignment 1, and (ii) that certain Mortgage and Security Agreement granted by Durgama, as mortgagor, in favor of First Guaranty, as mortgagee, dated June 21, 2006, and recorded in Official Records Book 13678, page 1873 of the current public records of Duval County, Florida, as modified by that certain Mortgage Modification Agreement and Receipt of Future Advance dated December 5, 2006, and recorded in Official Records Book 13693, page 1775 of the current public records of Duval County, Florida, and re-recorded in Official Records Book 14654, page 240 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 2 (collectively, "Mortgage 2"), which Mortgage 1 and Mortgage 2 have been previously amended, consolidated and restated by that certain Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement dated November 18, 2008, granted by Durgama and Shree-Shiviji, LLC ("Shree") in favor of Haven Trust, recorded in Official Records Book 14699, page 1484 of the current public records of Duval County, Florida (collectively, the "Mortgage"), which Mortgage secures the repayment of the Note.

E.    To (i) that certain Assignment of Rents, Leases and Profits granted by Durgama, as assignor, in favor of First Guaranty, as assignee, dated September 15, 2005, and recorded in Official Records Book 12787, page 1635 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 1 (collectively, the "Assignment of Rents 1"), and (ii) that certain Assignment of Rents, Leases and Profits granted by Durgama, as assignor, in favor of First Guaranty, as assignee, dated June 21, 2006, and recorded in Official Records Book 13678, page 1887 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 2 (collectively, the "Assignment of Rents 2"), which Assignment of Rents 1 and Assignment of Rents 2 have been previously amended, consolidated and restated by that certain Amended and Restated Conditional Assignment of Rents, Leases and Revenues dated November 18, 2008, granted by Durgama and Shree in favor of Haven Trust, recorded in Official Records Book 14699, page 1511 of the current public records of Duval County, Florida (collectively, the "Assignment of Rents"), which Assignment of Rents secures the repayment of the Note.

F.    To that certain Loan Policy of Title Insurance issued by Chicago Title Insurance Company, Policy 7210709-76790794, with an effective date of November 17, 2008, insuring the aggregate amount of $12,200,000.00 (the "Loan Policy").

JAX\1471294_2                                    -2-

G.    To that certain Uniform Commercial Code Financing Statement recorded in Official Records Book 12787, page 1632 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 1 (the "Local UCC").

H.    To that certain Uniform Commercial Code Financing Statement with the Florida Secured Transaction Registry under File No. 200809555822 (the "State UCC").

I.    The Note, Mortgage, Assignment of Rents, Loan Policy, Local UCC, State UCC, that certain Loan Agreement dated November 14, 2008 and any and all other documents and instruments executed and/or delivered in connection with such loans shall be collectively referred to herein as the "Collateral Documents".

J.    Any and all claims, actions, causes of action, choses of action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of attorney's fees, costs or other expenses of any nature whatsoever, whether known or unknown, arising from, relating to or based upon that certain loan evidenced by the Note and/or Mortgage above and any other documents evidencing or securing same (the "Claims").

NOW, THEREFORE, for valuable consideration granted by Assignee to Assignor, receipt of which is hereby acknowledged, Assignor hereby agrees as follows:

1.    Assignment of Note, Mortgage, Assignment of Rents and Collateral Documents. Assignor hereby unconditionally grants, transfers, and assigns to Assignee all of Assignor's right, title and interest in the Note, Mortgage, Assignment of Rents and Collateral Documents, including all of Assignor's right to receive payments of principal and interest under the Note and any other payments due under the Note, Mortgage, Assignment of Rents and/or Collateral Documents. Concurrently herewith, Assignor has endorsed to Assignee, without recourse, the Note.

2.    All Other Loan Documents. Assignor hereby unconditionally grants, transfers, and assigns to Assignee all Assignor's right, title and interest in all other documents or agreements evidencing, securing or relating to the loan evidenced by the Note, Mortgage, Assignment of Rents and Collateral Documents (hereinafter referred to collectively as the "Loan"). In this Assignment, the Note, the Mortgage, Assignment of Rents, the Collateral Documents, and all other documents evidencing or securing the Loan are referred to collectively as the "Loan Documents."

3.    Assignment of Claims. Assignor hereby unconditionally grants, transfers, and assigns to Assignee all of Assignor's right, title and interest in and to the Claims.

4.    Representations and Warranties. In accordance with the Act, Assignor has full power to sell and assign the Loan Documents and the Claims to the Assignee. Assignor has made no prior assignment or pledge of the Loan Documents or the Claims. This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

5.    Successors and Assigns. This Assignment shall inure to the benefit of the successors and assigns of Assignor and Assignee, and be binding upon the successors and assigns of Assignor and Assignee.

JAX\1471294_2                                    -3-

IN WITNESS WHEREOF, Assignor has executed this Assignment to Assignee as of the day and year first above written.

> FEDERAL DEPOSIT INSURANCE
> CORPORATION, RECEIVER OF HAVEN
> TRUST BANK FLORIDA, PONTE VEDRA
> BEACH, FLORIDA, organized under the laws of
> the United States of America
>
> By: _____
>
> Name: Trish Parrott
> Title:  Attorney-in-Fact

STATE OF FLORIDA
COUNTY OF ST. JOHNS Palm Beach

On the 9th day of November, 2010, before me, the undersigned, personally appeared Trish Parrott, the Attorney-in-Fact of the **FEDERAL DEPOSIT INSURANCE CORPORATION**, in its capacity as the **RECEIVER OF HAVEN TRUST BANK FLORIDA, PONTE VEDRA BEACH, FLORIDA**, on behalf of the corporation, who *(check one)* ☑ is personally known to me or ☐ has provided me with *(insert type of identification)* _____ as satisfactory evidence that he/she is the person who executed this instrument.

NOTARY PUBLIC-STATE OF FLORIDA
Jennifer L. Seely
Commission # DD870315
Expires:  MAR. 15, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Notary Public, State and County Aforesaid
(Print Name) Stacie P. Wagner (See Notary Seal)
My Commission Expires: *(See Notary Seal)*
My Commission Number is: *(See Notary Seal)*

ALLONGE TO THAT CERTAIN PROMISSORY NOTE DATED SEPTEMBER 15, 2005, EXECUTED AND DELIVERED BY DURGAMA, INC., TO FIRST GUARANTY BANK AND TRUST COMPANY OF JACKSONVILLE, IN THE ORIGINAL PRINCIPAL AMOUNT OF TWO MILLION TWO HUNDRED THIRTY FIVE THOUSAND AN 00/100 DOLLARS ($2,235,000.00) AND A PORTION OF THAT CERTAIN CONSOLIDATING RENEWAL PROMISSORY NOTE DATED DECEMBER 5, 2006, EXECUTED AND DELIVERED BY DURGMA, INC. TO FIRST GUARANTY BANK AND TRUST COMPANY OF JACKSONVILLE IN THE ORIGINAL PRINCIPAL AMOUNT OF SEVEN MILLION ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($7,100,000.00) AS ASSIGNED TO HAVEN TRUST BANK FLORIDA ON NOVEMBER 14, 2008; COMBINED AND COLLECTIVELY RENEWED ON NOVEMBER 14, 2008 BY A RENEWAL PROMISSORY NOTE EXECUTED AND DELIVERED BY DURGAMA, INC AS MAKER IN FAVOR OF HAVEN TRUST BANK FLORIDA IN THE ORIGINAL PRINCIPAL AMOUNT OF EIGHT MILLION SEVEN HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($8,750,000.00).

Pay to the order of **FIRST SOUTHERN BANK,** without recourse, and without representations and warranties, express or implied, except as may be set forth in a separate writing executed by the undersigned.

Effective as of the 24th day of September, 2010.

FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF HAVEN TRUST BANK FLORIDA, PONTE VEDRA BEACH, FLORIDA, organized under the laws of the United States of America

By: _____

Name: Wilfried Jackson (a/k/a Wilfred Jackson)

Title: Attorney-in-Fact

JAX\1468722_1

**Exhibit "D"**
(Renewal Note 2)

**RENEWAL PROMISSORY NOTE**
**INCLUDING FUTURE ADVANCE**

$3,450,000.00

Jacksonville, Florida
November 14, 2008

FOR VALUE RECEIVED, the undersigned DURGAMA, INC., a Florida corporation ("Borrower"), jointly and severally, if more than one, promise(s) to pay to the order of HAVEN TRUST BANK FLORIDA, a Florida banking corporation (hereinafter called "Lender", which term shall include any subsequent holder hereof), at 212 Ponte Vedra Park Drive, Ponte Vedra Beach, Florida 32082 or at such other place as Lender may designate in writing from time to time in legal tender of the United States of America, the principal sum of Three Million Four Hundred Fifty Thousand and 00/100 Dollars ($3,450,000.00) or so much thereof as may be advanced hereunder or under any loan agreement, together with interest on the unpaid balance outstanding at the rate provided below.

INTEREST. Interest accruing on the principal balance outstanding under this Promissory Note at the rate of seven and three-quarters of one percent (7.75%) per annum and shall be calculated on the basis of a 360 day year for the actual number of days elapsed.

PAYMENTS. Principal and interest shall become due and payable on the dates and in the manner as follows:

1. Interest only on the amount of the unpaid principal balance shall be due and payable monthly, commencing on the 14th day of December, 2008, and continuing on the same day of each successive month thereafter ensuing until and including November 14, 2009.

2. Principal payments on this Promissory Note in the amount set forth on Schedule "A", together with accrued and unpaid interest, shall be due and payable monthly commencing on the 14th day of December, 2009, and continuing on the 14th day of each calendar month thereafter ensuing through and including the "Maturity Date."

3. The entire unpaid principal balance, together with any accrued and unpaid interest, is due and payable on November 14, 2011 (the "Maturity Date").

TIME IS OF THE ESSENCE. TIME IS OF THE ESSENCE of this Promissory Note.

APPLICATION OF PAYMENTS. Except as otherwise specified herein, each payment or prepayment, if any, made under this Promissory Note shall be applied to pay late charges, accrued and unpaid interest, principal, escrows (if any), and any other fees, costs and expenses which Borrower is obligated to pay under this Promissory Note, in such order as Lender may elect from time to time in its sole discretion.

TENDER OF PAYMENT. All payments on this Promissory Note are payable on or before 2:00 p.m. on the due date thereof, at the office of Lender specified above and shall be credited on the date the funds become available in lawful money of the United States. All sums

payable to Lender that are due on a day on which Lender is not open for business shall be paid on the next succeeding business day and such extended time shall be included in the computation of interest.

PREPAYMENTS. Privilege is hereby reserved to prepay the principal payable under this Promissory Note in whole or in part without penalty; provided that any prepayments shall be applied against principal then last to become due under this Promissory Note. Prepayment in part shall not affect, vary or postpone the duty of the Borrower to pay all obligations when due, and it shall not affect or impair the right of the Lender to pursue all remedies available to it hereunder or under the "Loan Documents"(as that term is hereinafter defined).

RENEWAL AND FUTURE ADVANCE. The Lender is the owner and holder of the following promissory notes executed by the Borrower: (1) that certain Promissory Note dated September 15, 2005, executed and delivered by Borrower to Prior Lender in the original principal amount of Two Million Two Hundred Thirty Five Thousand and 00/100 Dollars ($2,235,000.00) ("Note 1"); and (2) that certain Consolidating Renewal Promissory Note dated December 5, 2006, executed and delivered by Borrower to Prior Lender in the original principal amount of Seven Million One Hundred Thousand and 00/100 Dollars ($7,100,000.00) ("Note 2"; Note 1 and Note 2 are hereinafter collectively referred to as the "Prior Note"). The current aggregate outstanding principal balance under the Prior Notes is Nine Million Eighty Two Thousand Four Hundred Sixty and 38/100 Dollars ($9,082,460.38). A portion of the outstanding principal balance under the Prior Note was renewed pursuant to that certain Renewal Promissory Note in the original principal amount of Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) from Borrower to Lender dated of even date herewith. The principal sums evidenced by and advanced or to be advanced pursuant to the terms of this Promissory Note consist of: (i) Three Hundred Thirty Two Thousand Four Hundred Sixty and 38/100 Dollars ($332,460.38), which represents the remaining outstanding principal balance formerly evidenced by the Prior Note, and (ii) Three Million One Hundred Seventeen Thousand Five Hundred Thirty Nine and 62/100 Dollars ($3,117,539.62) of new loan proceeds (hereinafter referred to as the "Future Advance"). This Promissory Note is given, in part, to renew the Prior Note. As to the renewal of the Prior Note, this Promissory Note is intended to comply with the requirements of Section 201.09, Florida Statutes, and is intended to be exempt from Florida documentary stamp taxation thereunder. Accordingly, pursuant to §201.09, Florida Statutes, documentary stamp taxes in the amount of Ten Thousand Nine Hundred Eleven and 60/100 Dollars ($10,911.60) based upon the amount of the Future Advance, have been paid and affixed to the Mortgage (defined below) securing this Promissory Note.

LOAN DOCUMENTS. This Promissory Note is secured by: (i) that certain Mortgage and Security Agreement, dated September 15, 2005, and recorded in Official Records Book 12787, page 1620, of the current public records of Duval County, Florida ("Mortgage 1"); and (ii) that certain Mortgage and Security Agreement, dated June 21, 2006, and recorded in Official Records Book 13678, page 1873, as modified by that certain Mortgage Modification Spreading Agreement and Receipt for Future Advance, dated December 5, 2006, and recorded in Official Records Book 13693, page 1775, both of the current public records of Duval County, Florida (collectively "Mortgage 2"), which Mortgage 1 and Mortgage 2 are amended, consolidated and restated by that certain Amended and Restated Mortgage, Security Agreement, Financing

Statement and Spreading Agreement, dated as of even date herewith, granted by the Borrower and Shree-Shiviji, LLC ("Shree") in favor of the Lender and encumbering certain real property of the Borrower and Shree located in Duval County, Florida (hereinafter collectively referred to as the "Mortgage"). This Promissory Note, the Mortgage, that certain Loan Agreement dated of even date herewith and all other documents evidencing and securing the loan evidenced by this Promissory Note shall be hereinafter referred to as the "Loan Documents."

LATE FEE. The Borrower shall pay a late fee of five cents on each dollar ($1.00) on any monthly installment which is delinquent for more than fifteen (15) days. The agreement to pay a late fee shall not be construed to give rise to a grace period or in any way extend or alter the due dates of payments under this Promissory Note.

DEFAULT AND DEFAULT INTEREST. Any payment of principal or interest under this Promissory Note which is not paid within fifteen (15) days after it becomes due, shall bear interest at a rate per annum equal to the lesser of: (i) eighteen percent (18%) per annum, or (ii) the highest rate of interest allowed by law (hereinafter referred to in this Promissory Note and in the Loan Documents as the "Default Rate") until paid. The Lender shall have the right to declare the total unpaid principal balance, together with all accrued interest, immediately due and payable upon: (i) the failure of the Borrower to pay any payment due hereunder within ten (10) days after its due date; or (ii) upon the occurrence of any event of default under the terms of the Loan Documents if such default continues after the expiration of all applicable notice and cure periods. Upon exercise of this option by the Lender, the entire unpaid principal shall bear interest at the Default Rate until paid. Forbearance to exercise this right with respect to any default by the Borrower shall not constitute a waiver of the right as to any subsequent default. Exercise of this right shall be without notice to the Borrower, notice of such exercise being hereby expressly waived.

PAYMENT OF COSTS. Borrower covenants and agrees to pay all costs, taxes, fees, and expenses of every kind and nature, including the Lender's reasonable attorneys' fees and paralegal fees (including on appeal and in bankruptcy), documentary stamp taxes, intangible taxes and other excise taxes, and the cost of title evidence, incurred or expended at any time by the Lender in the collection of the loan evidenced hereby and/or foreclosure of the Mortgage or otherwise incurred in protecting and preserving the lien of the Mortgage or in enforcing Lender's rights and remedies under the Loan Documents. Every such payment made by or on behalf of the Lender shall be immediately due and payable by the Borrower to the Lender and shall bear interest from the date of disbursement by the Lender at the Default Rate and the same, together with such interest, shall be secured by the lien of the Mortgage. Nothing contained in this paragraph shall be construed as requiring the Lender to advance or spend money for any of the purposes mentioned in this paragraph.

WAIVERS AND CONSENTS. The Borrower, for itself and its successors and assigns, hereby expressly waives presentment, demand for payment, notice of dishonor, protest, notice of non-payment, and diligence in collection. Borrower consents that the time of all payments or any part thereof may be extended, rearranged, renewed or postponed by the Lender, and further consents that all or any portion of the collateral securing the repayment of this Promissory Note may be released, exchanged, added to or substituted by the Lender, without in anyway

modifying, altering, releasing, affecting, or limiting the Borrower's liability or any lien or security interest granted the Lender pursuant to the Loan Documents. Borrower agrees that the Lender shall not be required first to institute any suit or to exhaust any of its remedies against the Borrower or any other person or party liable hereunder in order to enforce payment of this Promissory Note.

CHOICE OF LAW. This Promissory Note is to be construed and enforced according to the laws of the State of Florida.

LIMITATION OF INTEREST. All agreements between the Borrower and the Lender are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the Lender for the use, forbearance, or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable. If, from any circumstances whatsoever, fulfillment of any provision of this Promissory Note or any provision of the Loan Documents, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable thereto, then ipso facto, the obligation to be fulfilled shall be reduced to the maximum limit of such validity, and if for any circumstances whatsoever the Lender shall ever receive interest, the amount of which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance remaining unpaid hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the Borrower and the Lender.

CROSS DEFAULT/CROSS-COLLATERALIZATION. Lender has also made a loan to Borrower's affiliate, Jai Ambaji Corporation, a Delaware corporation ("Jai Ambaji"), in the original principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) (the "Additional Loan"), which is secured by that certain Amended and Restated Leasehold Mortgage and Security Agreement, dated of even date herewith and recorded simultaneously herewith in the public records of St. Johns County, Florida (the "Additional Mortgage"), encumbering certain real property located at 2550 State Road 16, St. Augustine, Florida 32092. The Additional Loan is evidenced by that certain Renewal Promissory Note Including Future Advance in favor of Lender in the original principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) (the "Additional Note"). In addition to securing the payment and performance by the Borrower of the Borrower's obligations under the Loan Documents, the Mortgage shall also secure the repayment by Jai Ambaji of all principal, interest and other sums due by Jai Ambaji to Lender pursuant to the terms of the Additional Note, and the Additional Mortgage shall also secure the repayment by Borrower of all principal, interest and others sums due by Borrower to Lender pursuant to the terms of the Loan Documents. Furthermore, should Jai Ambaji default in the performance of its obligations under the Additional Note, then such default shall be considered a default by the Borrower under the terms of this Promissory Note and the Mortgage, and should the Borrower default in the performance of its obligations under this Promissory Note, then such default shall be considered a default by Jai Ambaji under the terms of the Additional Note and the Additional Mortgage.

WAIVER OF JURY TRIAL. AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN EVIDENCED HEREBY, LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS PROMISSORY NOTE, THE LOAN EVIDENCED HEREBY, ALL DOCUMENTS AND AGREEMENTS EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THE LOAN EVIDENCED HEREBY, AND ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

DURGAMA, INC., a Florida corporation

By: _____

Name: Narendra Patel

Title: President

(CORPORATE SEAL)

The proper Florida Documentary Stamp Taxes in the amount of $10,911.60, based on the Future Advance portion of this Promissory Note, have been paid and the proper documentary stamps have been affixed to the Mortgage.

SCHEDULE "A"

| Date | Principal Payment |
|------|-------------------|
| 12/14/2009 | $16,226.55 |
| 01/14/2010 | $13,999.14 |
| 02/14/2010 | $14,081.07 |
| 03/14/2010 | $21,106.07 |
| 04/14/2010 | $14,287.61 |
| 05/14/2010 | $16,678.73 |
| 06/14/2010 | $14,469.06 |
| 07/14/2010 | $16,855.37 |
| 08/14/2010 | $14,652.63 |
| 09/14/2010 | $14,738.41 |
| 10/14/2010 | $17,117.56 |
| 11/14/2010 | $14,925.11 |
| 12/14/2010 | $17,299.31 |
| 01/14/2011 | $15,113.99 |
| 02/14/2011 | $15,202.48 |
| 03/14/2011 | $22,124.94 |
| 04/14/2011 | $15,421.65 |
| 05/14/2011 | $17,782.67 |
| 06/14/2011 | $15,616.31 |
| 07/14/2011 | $17,972.16 |
| 08/14/2011 | $15,813.23 |
| 09/14/2011 | $15,905.85 |
| 10/14/2011 | $18,254.01 |
| 11/14/2011 | $16,106.15 |

## Composite Exhibit "E"
### (Renewal Note 2 Haven Trust Assignment Documents)

Doc # 2010264227, OR BK 15427  Page 1439,  Number Pages: 4,  Recorded 11/12/2010 at 02:09 PM, JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY RECORDING $35.50

RECORD & RETURN TO:
Laurie Hammerbacher, Esq.
212 Ponte Vedra Park Drive
Ponte Vedra Beach, FL 32082
Telephone: 904-281-8355
Facsimile: 904-302-7777

## ASSIGNMENT OF NOTES, MORTGAGE AND LOAN DOCUMENTS

THIS ASSIGNMENT OF NOTES, MORTGAGE AND LOAN DOCUMENTS (this "Assignment") is made effective as of the 24th day of September, 2010, by and between the FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF HAVEN TRUST BANK FLORIDA, PONTE VEDRA BEACH, FLORIDA, organized under the laws of the United States of America ("Assignor"), having an address of 7777 Baymeadows Way West, Jacksonville, Florida 32256, Attention: Settlement Agent, and FIRST SOUTHERN BANK ("Assignee") with an address of 900 North Federal Highway, Suite 300, Boca Raton, Florida 33432, Attention: Marsha M. Gassan.

WHEREAS, effective September 24, 2010, in accordance with Florida law and the Federal Deposit Insurance Act, 12 U.S.C §1821 et. seq. (the "Act"), the Florida Office of Financial Regulation closed the operations of Haven Trust Bank Florida ("Haven Trust"), and appointed the Assignor as the receiver of Haven Trust.

WHEREAS, in accordance with the Act, the Assignor is empowered to liquidate the assets of Haven Trust in order to wind down the affairs of Haven Trust.

WHEREAS, on or about September 24, 2010, in accordance with that certain Purchase and Assumption Agreement (Whole Bank, All Deposits) dated as of September 24, 2010 (the "Purchase Agreement"), by and among the Assignor, Assignee and the Federal Deposit Insurance Corporation ("FDIC"), the Assignor sold certain assets of Haven Trust to Assignee, including, but not limited to, the following loan documents and other rights:

A. To (i) that certain Promissory Note dated September 15, 2005, executed and delivered by Durgama, Inc., a Florida corporation ("Durgama") to First Guaranty Bank and Trust Company of Jacksonville ("First Guaranty"), in the original principal amount of Two Million Two Hundred Thirty Five Thousand and 00/100 Dollars ($2,235,000.00), as assigned from First Guaranty to Haven Trust by that certain Assignment of Note, Mortgage and Loan Documents dated November 14, 2008 and recorded in Official Records Book 14699, page 1472 of the current public records of Duval County ("Assignment 1"), and (ii) a portion of that certain Consolidating Renewal Promissory Note dated December 5, 2006, executed and delivered by Durgama to First Guaranty in the original principal amount of Seven Million One Hundred Thousand and 00/100 Dollars ($7,100,000.00), as assigned from First Guaranty to Haven Trust by that certain Assignment of Note, Mortgage and Loan Documents dated November 14, 2008 and recorded in Official Records Book 14699, page 1478 of the current public records of Duval County ("Assignment 2"); and renewed, in part, by that certain Renewal Promissory Note dated November 14, 2008, executed and delivered by Durgama in favor of Haven Trust in the original principal amount of

Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) (collectively, "Note 1").

B.       To (i) that certain Promissory Note dated September 15, 2005, executed and delivered by Durgama to First Guaranty in the original principal amount of Two Million Two Hundred Thirty Five Thousand and 00/100 Dollars ($2,235,000.00), as assigned from First Guaranty to Haven Trust by the Assignment 1, and (ii) a portion of that certain Consolidating Renewal Promissory Note dated December 5, 2006, executed and delivered by Durgama to First Guaranty in the original principal amount of Seven Million One Hundred Thousand and 00/100 Dollars ($7,100,000.00), as assigned from First Guaranty to Haven Trust by the Assignment 2, and renewed, in part, by that certain Renewal Promissory Note Including Future Advance dated November 14, 2008 executed and delivered by Durgama in favor of Haven Trust in the original principal amount of Three Million Four Hundred Fifty Thousand and 00/100 Dollars ($3,450,000.00) (collectively, "Note 2").

C.       Note 1 and Note 2 shall be collectively referred to herein as the "Note".

D.       To (i) that certain Mortgage and Security Agreement granted by Durgama, as mortgagor, in favor of First Guaranty, as mortgagee, dated September 15, 2005, and recorded in Official Records Book 12787, page 1620, of the current public records of Duval County, Florida (collectively, the "Mortgage 1"), as assigned to Haven Trust by the Assignment 1, and (ii) that certain Mortgage and Security Agreement granted by Durgama, as mortgagor, in favor of First Guaranty, as mortgagee, dated June 21, 2006, and recorded in Official Records Book 13678, page 1873 of the current public records of Duval County, Florida, as modified by that certain Mortgage Modification Agreement and Receipt of Future Advance dated December 5, 2006, and recorded in Official Records Book 13693, page 1775 of the current public records of Duval County, Florida, and re-recorded in Official Records Book 14654, page 240 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 2 (collectively, "Mortgage 2"), which Mortgage 1 and Mortgage 2 have been previously amended, consolidated and restated by that certain Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement dated November 18, 2008, granted by Durgama and Shree-Shiviji, LLC ("Shree") in favor of Haven Trust, recorded in Official Records Book 14699, page 1484 of the current public records of Duval County, Florida (collectively, the "Mortgage"), which Mortgage secures the repayment of the Note.

E.       To (i) that certain Assignment of Rents, Leases and Profits granted by Durgama, as assignor, in favor of First Guaranty, as assignee, dated September 15, 2005, and recorded in Official Records Book 12787, page 1635 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 1 (collectively, the "Assignment of Rents 1"), and (ii) that certain Assignment of Rents, Leases and Profits granted by Durgama, as assignor, in favor of First Guaranty, as assignee, dated June 21, 2006, and recorded in Official Records Book 13678, page 1887 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 2 (collectively, the "Assignment of Rents 2"), which Assignment of Rents 1 and Assignment of Rents 2 have been previously amended, consolidated and restated by that certain Amended and Restated Conditional Assignment of Rents, Leases and Revenues dated November 18, 2008, granted by Durgama and Shree in favor of Haven Trust, recorded in Official Records Book 14699, page 1511 of the current public records of Duval County, Florida (collectively, the "Assignment of Rents"), which Assignment of Rents secures the repayment of the Note.

F.       To that certain Loan Policy of Title Insurance issued by Chicago Title Insurance Company, Policy 7210709-76790794, with an effective date of November 17, 2008, insuring the aggregate amount of $12,200,000.00 (the "Loan Policy").

G.    To that certain Uniform Commercial Code Financing Statement recorded in Official Records Book 12787, page 1632 of the current public records of Duval County, Florida, as assigned from First Guaranty to Haven Trust by the Assignment 1 (the "Local UCC").

H.    To that certain Uniform Commercial Code Financing Statement with the Florida Secured Transaction Registry under File No. 200809555822 (the "State UCC").

I.    The Note, Mortgage, Assignment of Rents, Loan Policy, Local UCC, State UCC, that certain Loan Agreement dated November 14, 2008 and any and all other documents and instruments executed and/or delivered in connection with such loans shall be collectively referred to herein as the "Collateral Documents".

J.    Any and all claims, actions, causes of action, choses of action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of attorney's fees, costs or other expenses of any nature whatsoever, whether known or unknown, arising from, relating to or based upon that certain loan evidenced by the Note and/or Mortgage above and any other documents evidencing or securing same (the "Claims").

NOW, THEREFORE, for valuable consideration granted by Assignee to Assignor, receipt of which is hereby acknowledged, Assignor hereby agrees as follows:

1.    Assignment of Note, Mortgage, Assignment of Rents and Collateral Documents. Assignor hereby unconditionally grants, transfers, and assigns to Assignee all of Assignor's right, title and interest in the Note, Mortgage, Assignment of Rents and Collateral Documents, including all of Assignor's right to receive payments of principal and interest under the Note and any other payments due under the Note, Mortgage, Assignment of Rents and/or Collateral Documents. Concurrently herewith, Assignor has endorsed to Assignee, without recourse, the Note.

2.    All Other Loan Documents. Assignor hereby unconditionally grants, transfers, and assigns to Assignee all Assignor's right, title and interest in all other documents or agreements evidencing, securing or relating to the loan evidenced by the Note, Mortgage, Assignment of Rents and Collateral Documents (hereinafter referred to collectively as the "Loan"). In this Assignment, the Note, the Mortgage, Assignment of Rents, the Collateral Documents, and all other documents evidencing or securing the Loan are referred to collectively as the "Loan Documents."

3.    Assignment of Claims. Assignor hereby unconditionally grants, transfers, and assigns to Assignee all of Assignor's right, title and interest in and to the Claims.

4.    Representations and Warranties. In accordance with the Act, Assignor has full power to sell and assign the Loan Documents and the Claims to the Assignee. Assignor has made no prior assignment or pledge of the Loan Documents or the Claims. This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

5.    Successors and Assigns. This Assignment shall inure to the benefit of the successors and assigns of Assignor and Assignee, and be binding upon the successors and assigns of Assignor and Assignee.

IN WITNESS WHEREOF, Assignor has executed this Assignment to Assignee as of the day and year first above written.

FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF HAVEN TRUST BANK FLORIDA, PONTE VEDRA BEACH, FLORIDA, organized under the laws of the United States of America

By: _____

Name: Trish Parrott
Title:  Attorney-in-Fact

STATE OF FLORIDA
COUNTY OF ~~ST. JOHNS~~ Palm Beach

On the 9th day of November, 2010, before me, the undersigned, personally appeared ~~Trish~~ Parrott, the Attorney-in-Fact of the FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as the RECEIVER OF HAVEN TRUST BANK FLORIDA, PONTE VEDRA BEACH, FLORIDA, on behalf of the corporation, who *(check one)* ☑ is personally known to me or ☐ has provided me with *(insert type of identification)* _____ as satisfactory evidence that he/she is the person who executed this instrument.

NOTARY PUBLIC-STATE OF FLORIDA
Jennifer L. Seely
Commission # DD870315
Expires:  MAR. 15, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

_____
Notary Public, State and County Aforesaid
(Print Name) ~~Stacie P. Wagner~~ (See Notary Seal)
My Commission Expires: *(See Notary Seal)*
My Commission Number is: *(See Notary Seal)*

JAX\1471294_2                                    -4-

ALLONGE TO THAT CERTAIN PROMISSORY NOTE DATED SEPTEMBER 15, 2005, EXECUTED AND DELIVERED BY DURGAMA, INC. TO FIRST GUARANTY BANK AND TRUST COMPANY OF JACKSONVILLE, IN THE ORIGINAL PRINCIPAL AMOUNT OF TWO MILLION TWO HUNDRED THIRTY FIVE THOUSAND AN 00/100 DOLLARS ($2,235,000.00) AND A PORTION OF THAT CERTAIN CONSOLIDATING RENEWAL PROMISSORY NOTE DATED DECEMBER 5, 2006, EXECUTED AND DELIVERED BY DURGAMA, INC. TO FIRST GUARANTY BANK AND TRUST COMPANY OF JACKSONVILLE IN THE ORIGINAL PRINCIPAL AMOUNT OF SEVEN MILLION ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($7,100,000.00) AS ASSIGNED TO HAVEN TRUST BANK FLORIDA ON NOVEMBER 14, 2008, COMBINED AND COLLECTIVELY AND RENEWED ON NOVEMBER 14, 2008 BY A RENEWAL PROMISSORY NOTE EXECUTED AND DELIVERED BY DURGAMA, INC AS MAKER IN FAVOR OF HAVEN TRUST BANK FLORIDA IN THE ORIGINAL PRINCIPAL AMOUNT OF THREE MILLION FOUR HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($3,450,000.00).

Pay to the order of **FIRST SOUTHERN BANK,** without recourse, and without representations and warranties, express or implied, except as may be set forth in a separate writing executed by the undersigned.

Effective as of the 24th day of September, 2010.

**FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF HAVEN TRUST BANK FLORIDA, PONTE VEDRA BEACH, FLORIDA,** organized under the laws of the United States of America

By: _____
Name: Wilfried Jackson (a/k/a Wilfred Jackson)
Title:  Attorney-in-Fact

## Exhibit "F"
## (Property Description)

Parcel 1:

A parcel of land lying and being a part of the F Richard Grant, Section 56, Township 3 South, Range 27 East, Duval County, Florida being more particularly described as follows: For a point of commencement begin at the Southwest corner of Section 23 and the Northwest corner of Section 26 and lying in the Easterly line of said F Richard Grant, all within said Township 3 South, Range 27 East, said point of commencement also being situated in the centerline of Baymeadows Road, a 100 foot right-of-way line as now established; thence south 89°44'01" West, along said right-of-way line, a distance of 382.12 feet to a point situated on the Northerly production of the Westerly right-of-way line of Western Way, an 80 foot right-of-way as now established; thence South 00°15'59" East, along said Westerly right-of-way line of Western Way, a distance of 376.96 ft to the Point of Beginning;

Thence continue South 00°15'59" East, a distance of 215.01 feet to a point of curvature of a curve concave Westerly and having a radius of 465.13 feet; thence Southerly along the arc of said curve through a central angle of 01°50'57", an arc length of 15.01 feet, said curve being subtended by chord bearing and distance of South 00°39'51" West, 15.01 feet; thence departing said right of way line, South 89°44'01" West a distance of 237.26 feet; thence North 00°15'59" West a distance of 153.15 feet; thence North 89°31'54" East a distance of 27.80 feet ; thence North 00°15'59" West a distance of 75.94 feet; thence North 89°31'54" East a distance of 128.99 feet; thence South 00°15'59" East a distance of 2.34 feet; thence North 89°31'54" East a distance of 7.00 feet; thence North 00°15'59" West a distance of 2.34 feet; thence North 89°31'54" East a distance of 73.71 feet to the Westerly right-of-way line of Western Way and the Point of Beginning.

Parcel 3:

A Parcel of land lying and being a part of the F Richard Grant, Section 56, Township 3 South, Range 27 East, Duval County, Florida being more particularly described as follows: For a point of commencement begin at the Southwest Corner of Section 23 and the Northwest corner of Section 26 and lying in the Easterly line of said F Richard Grant, all within said Township 3 South, Range 27 East, said point of commencement also being situated in the centerline of Baymeadows Road, a 100 foot right-of-way as now established; thence South 89°44'01" West along said right-of-way line, a distance of 382.12 feet to a point situated on the Northerly production of the Westerly right-of-way line of Western Way, an 80 foot right-of-way as now established; thence South 00°15'59" East along said Westerly right-of-way line of Western Way, a distance of 240.00 feet to the Point of Beginning;

Thence South 00°15'59" East continuing along said Westerly right-of-way line, a distance of 136.96 feet; thence South 89°31'54" West, departing said Westerly right-of-way line, a distance of 73.71 feet; thence South 00°15'59" East, a distance of 2.40 feet; thence South 89°31'54" West, a distance of 7.00 feet; thence North 00°15'59" West, a distance of 2.34 feet; thence South 89°31'54" West, a distance of 128.99 feet; thence South 00°15'59" East, a distance of 75.94 feet; thence South 89°31'54" West a distance of 27.80 feet; thence South 00°15'59" East a distance of 30.33 feet; thence South 89°42'11" West a distance of 155.01 feet; thence South 00°16'35" East a distance of 103.18 feet; thence South 89°35'47" West a distance of 201.06 feet; thence North 20°32'58" West a distance of 434.29 feet; thence North 44°30'44" East a distance of 62.61 feet; thence North 65°01'52" East a distance of 17.23 feet; thence North 77°10'41" East a distance of 86.40 feet; thence South 00°15'59" East a distance of 40.00 feet; thence South 77°10'41" West a Distance of 69.00 feet; thence South 65°01'52" West a distance of 10.29 feet; thence South 44°30'44" West a distance of 18.88 feet; thence South 00°19'20" East a distance of 12.28 feet; thence South 13°28'26" East a distance of 46.22 feet; thence North 89°44'01" East a distance of 679.44 feet to the Point of Beginning.

Less and Except any part of caption lying within I-95

JAX\1470532_2

Ingress/Egress easement.
A portion of the F Richard Grant, Section 36, Township 3 South, Range 27 East, City of Jacksonville, Duval County, Florida, being more fully described as follows:

Commence at the Intersection of the centerline of survey for Interstate Highway No.95, with the centerline of Baymeadows Road (formerly San Clerc Road) (both as now established by the Florida Department of Transportation, and shown on State Road right-of-way map under job no. 72280-3404); thence North 89°44'01" East, along the centerline of said Baymeadows Road, a distance of 581.22 feet; thence South 00°15'59" East, departing said centerline of Baymeadows Road, a distance of 90.00 feet to the Southerly right-of-way line of said Baymeadows Road; thence North 89°44'01" East along said Southerly right-of-way line Baymeadows Road, a distance of 20.00 feet to the Point of Beginning.

Thence continue North 89°44'01"East along said Southerly right-of-way line of Baymeadows Road, a distance of 40.00 feet to the point on a curve concave Northwesterly and having a radius of 79.10 feet; thence Southwesterly along the arc of said curve through a central angle of 64°53'32"; an arc length of 89.58 feet, said curve being subtended by a chord bearing a distance of South 44°44'01" West, 84.87 feet; thence North 00°15'59" West, a distance of 40.00 feet to a point of the curvature of a curve concave Northwesterly and having a radius of 40.98 feet; thence Northeasterly along the arc of said curve through a central angle of 40°23'53", an arc length of 28.90 feet, said curve being subtended by a chord bearing and distance of North 44°44'01" East, 28.30 feet to the Point of Beginning.