## Exhibit "G"
### (Amended and Restated Mortgage)

Doc # 2008289193, OR BK 14699 Page 1484, Number Pages: 27, Recorded 11/17/2008 at 10:52 AM, ( ) FULLER CLERK CIRCUIT COURT ( AL COUNTY RECORDING $231.00 MORTGAGE DOC ST $10911.60  INTANGIBLE TAX $6235.08

Prepared By/Record and Return To:
John R. Ibach, Esquire
Rogers Towers, P.A.
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207

NOTE TO CLERK: The Mortgage Note (defined below) secured hereby renews, in part, (i) that certain $2,235,000.00 Promissory Note ("Note 1") secured by the Mortgage recorded in Official Records Book 12787, page 1620, of the current public records of Duval County, Florida ("Mortgage 1"); and (ii) that certain Consolidating Renewal Promissory Note ("Note 2") secured by the Mortgage recorded at Official Records Book 13678, page 1873, as modified of record, all of the current public records of Duval County, Florida (collectively, "Mortgage 2"), which mortgages have been assigned to Haven Trust Bank Florida by Assignment recorded immediately prior to this document. The aggregate current principal balance outstanding under Note 1 and Note 2 is $9,082,460.38 on which documentary stamp taxes have been paid upon recordation of Mortgage 1 and Mortgage 2. This Mortgage secures the Mortgage Note in the aggregate principal amount of $12,200,000.00 which amount includes additional indebtedness of $3,117,539.62 (the "Future Advance"). Accordingly, Documentary Stamp Taxes in the amount of $10,911.60 and non-recurring intangible tax in the amount of $6,235.08 have been paid and affixed hereto, based on the Future Advance.

## AMENDED AND RESTATED MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT AND SPREADING AGREEMENT

THIS AMENDED AND RESTATED MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT AND SPREADING AGREEMENT (hereinafter referred to as the "Mortgage"), is made this 14th day of November, 2008, among DURGAMA, INC., a Florida corporation (Organizational ID #P97000030910), whose post office address is 1300 N. Ponce de Leon Boulevard, St. Augustine, Florida 32084 (hereinafter referred to as "Durgama"), SHREE-SHIVJI, LLC, a Florida limited liability company (Organizational ID #L05000089420), whose post office address is 1300 N. Ponce de Leon Boulevard, St. Augustine, Florida 32084 (hereinafter referred to as "Shree;" Durgama and Shree are hereinafter collectively referred to as the "Mortgagor") and HAVEN TRUST BANK FLORIDA, a Florida banking corporation, whose post office address is 212 Ponte Vedra Park Drive, Ponte Vedra Beach, FL 32082 (hereinafter referred to as the "Mortgagee") which terms Mortgagor and Mortgagee, whenever hereinafter used shall be construed to refer to and include the heirs, legal representatives, executors, administrators, successors and assigns of said parties;

## RECITALS:

Mortgagor and Mortgagee hereby make the following recitals which shall be deemed to be true and correct and are hereby made a part of this Mortgage.

A.    First Guaranty Bank and Trust Company of Jacksonville ("Prior Lender") has previously made a mortgage loan to Durgama, which Loan is evidenced by that certain Promissory Note, dated September 15, 2005, in the original principal amount of Two Million Two Hundred Thirty Five Thousand and 00/100 Dollars ($2,235,000.00) ("Note 1"), and secured by that certain Mortgage and Security Agreement, dated September 15, 2005, and recorded in Official Records Book 12787, page 1620, of the current public records of Duval County, Florida ("Mortgage 1").

B.     Prior Lender has also previously made a mortgage loan to Durgama, which Loan is evidenced by that certain Consolidating Renewal Promissory Note, dated December 5, 2006, in the original principal amount of Seven Million One Hundred Thousand and 00/100 Dollars ($7,100,000.00) ("Note 2"), and secured by that certain Mortgage and Security Agreement, dated June 21, 2006, and recorded in Official Records Book 13678, page 1873, as modified by that certain Mortgage Modification Spreading Agreement and Receipt for Future Advance, dated December 5, 2006, and recorded in Official Records Book 13693, page 1775, both of the current public records of Duval County, Florida (collectively "Mortgage 2").

Note 1 and Note 2 are hereinafter collectively referred to as the "Prior Note" and Mortgage 1 and Mortgage 2 are hereinafter collectively referred to as the "Prior Mortgage."

C.     Prior Lender has assigned the Prior Note and Prior Mortgage to Mortgagee pursuant to those certain Assignments of Note, Mortgage and Loan Documents, dated of even date herewith, and recorded immediately prior to this Mortgage in the public records of Duval County, Florida.

D.     The aggregate current principal balance outstanding under the Prior Note is Nine Million Eighty Two Thousand Four Hundred Sixty and 38/100 Dollars ($9,082,460.38) and is individually as follows:

(a)     Two Million Two Hundred Thirty One Thousand Four Hundred Fifty Four and 87/100 Dollars ($2,231,454.87) as to Note 1; and

(b)     Six Million Eight Hundred Fifty One Thousand Five and 51/100 Dollars ($6,851,005.51) as to Note 2.

E.     Mortgagor has requested that Mortgagee (i) extend the term of the Loans evidenced by the Prior Note, and (ii) extend a future advance of Three Million One Hundred Seventeen Thousand Five Hundred Thirty Nine and 62/100 Dollars ($3,117,539.62) which Mortgagee has agreed to do in consideration for the execution of the "Mortgage Note" described herein and the consolidation, modification and restatement of the Prior Mortgage and spreading of this Mortgage to additional property as hereinafter set forth.

F.     Contemporaneously herewith, Durgama has executed and delivered to Mortgagee the following:  (1) that certain Renewal Promissory Note, dated as of even date herewith, in the principal amount of Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) ("Renewal Note 1"); and (2) that certain Renewal Promissory Note Including Future Advance, dated of even date herewith, in the principal amount of Three Million Four Hundred Fifty Thousand and 00/100 Dollars ($3,450,000.00) ("Renewal Note 2"; Renewal Note 1 and Renewal Note 2 are hereinafter collectively referred to as the "Mortgage Note"). The Mortgage Note has a final due date for the payment of principal and any unpaid accrued interest of November 14, 2011, and by this reference is made a part hereof. The terms and conditions of repayment of the Prior Note shall, from and after the date of this Mortgage, be governed by the terms and conditions of the Mortgage Note and shall be secured by this Mortgage, as modified hereby. The principal sums advanced or to be advanced pursuant to the terms of the Mortgage Note consist of: (i) Nine Million Eighty Two Thousand Four Hundred Sixty and 38/100 Dollars

($9,082,460.38) of outstanding principal due under the Prior Note; and (ii) Three Million One Hundred Seventeen Thousand Five Hundred Thirty Nine and 62/100 Dollars ($3,117,539.62) of new loan proceeds (hereinafter referred to as the "Future Advance"). The Mortgage Note is given, in part, to renew the Prior Note. As to the renewal of the Prior Note, the Mortgage Note is intended to comply with the requirements of §201.09, Florida Statutes, and is intended to be exempt from Florida documentary stamp taxation thereunder. Accordingly, pursuant to §201.09, Florida Statutes, documentary stamp taxes in the amount of Ten Thousand Nine Hundred Eleven and 60/100 Dollars ($10,911.60) and non-recurring intangible tax in the amount of Six Thousand Two Hundred Thirty Five and 08/100 Dollars ($6,235.08) based upon the amount of the future advance under the Mortgage Note, have been paid and affixed hereto.

G. Pursuant to F.S. §697.04 and the terms of the Prior Mortgage, this Mortgage is modified and amended to change the principal sum that is secured hereby from Nine Million Eighty Two Thousand Four Hundred Sixty and 38/100 Dollars ($9,082,460.38) to Twelve Million Two Hundred Thousand and 00/100 Dollars ($12,200,000.00). Mortgagor covenants that it has not executed or delivered any documentation or made any promises or covenants to limit the maximum principal amount that may be secured by the Prior Mortgage as authorized by F.S. §697.04.

H. Lender and Mortgagor have entered into that certain Loan Agreement dated as of the date hereof (the "Loan Agreement").

I. As used herein, the term "Loan" shall refer to the loan evidenced by the Mortgage Note. To evidence and secure the Loan, the Mortgagor has executed and delivered to Mortgagee the Mortgage Note, this Mortgage, the Loan Agreement, a Conditional Assignment of Rents Leases and Revenues, a UCC-1 Financing Statement, and other documentation related to the Loan, which documents and any modification, extension and amendments thereof are herein referred to as the "Loan Documents.

J. One or more individuals or entities (collectively the "Guarantor") has guaranteed the repayment of the Mortgage Note and the performance of Mortgagor's obligations under the Loan Documents.

K. Durgama is the owner and holder of Parcel 3 identified on Exhibit "A" attached hereto (the "Existing Property"). Shree is the owner and holder of Parcel 1 identified on Exhibit "A" attached hereto (the "Additional Property") and joins in the execution of this Mortgage to consent to the spreading of the Mortgage to encumber the Additional Property. Shree hereby grants, conveys and mortgages unto Mortgagee the Additional Property as additional collateral for the performance of the obligations contained in the Mortgage and the Mortgage Note secured hereby. All covenants and warranties contained in the Mortgage are hereby deemed to apply to the Additional Property as well as the Existing Property.

L. As of the date hereof, the legal description of the real property encumbered by the Mortgage is hereby amended to include all of the property described in Exhibit "A."

M. Mortgagor and Mortgagee now desire to amend and restate the Prior Mortgage in its entirety so the Prior Mortgage, as amended and restated herein, shall secure the Loan

JAX\1263826_1

-3-

outstanding from time to time under the Mortgage Note and the observance and performance by Mortgagor, of the terms and conditions and covenants and agreements of Mortgagor in the Loan Documents.

Mortgagor and Mortgagee hereby agree that the Prior Mortgage is hereby restated in its entirety to read as follows:

THEREFORE, the Mortgagor, in consideration of and to secure the indebtedness now or hereafter evidenced and secured by the Loan Documents and the observance and performance by Mortgagor of the terms and conditions and agreements and covenants of Mortgagor in the Loan Documents, receipt whereof is hereby acknowledged, does hereby mortgage and grant a security interest in, grant, bargain, sell, alien, remise, release, convey, and confirm unto the Mortgagee, its legal representatives, heirs, successors and assigns, the land of which the Mortgagor is now seized and possessed and in actual possession situate in the County of Duval, State of Florida, described more particularly in **Exhibit "A"** attached hereto and by reference made a part hereof.

TOGETHER with all buildings, structures, and other improvements now or hereafter located on said real property, or any part thereof; and

TOGETHER with all rights-of-way, streets, alleys, passages, riparian and littoral rights, waters, water courses, sewer rights, rights, liberties, privileges, tenements, hereditaments, easements, and appurtenances thereunto belonging or in anyway appertaining, whether now owned or hereafter acquired by the Mortgagor, and including all rights of ingress and egress to and from said real property and all adjoining property (whether such rights now exist or subsequently arise), together with the reversion or reversions, remainder and remainders, rents, issues and profits thereof; and

TOGETHER with all of the Mortgagor's right, title and interest in all machinery, apparatus, equipment, fittings, and fixtures, whether actually or constructively attached to said real property, and all building materials of every kind and nature, and all trade, domestic, and ornamental fixtures and all personal property (excluding fixtures, furniture and personal property owned by tenants or other third parties) now or hereafter located in, upon, over, or under said real property or any part thereof on or off-site benefiting said real property and used or usable or intended to be used in connection with any present or future operation of said real property, including, but without limiting the generality of the foregoing: all heating, air-conditioning, lighting, incinerating, and power equipment; all engines, compressors, pipes, pumps, tanks, motors, conduits and switchboards; all plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; all boilers, furnaces, oil burners, vacuum cleaning systems, elevators, and escalators; all built-in stoves, ovens, ranges, disposal units, dishwashers, water heaters, exhaust systems, refrigerators, cabinets, and partitions; all rugs and carpets; laundry equipment; together with all contract rights to acquire any of the foregoing and all deposits and payments made under contracts for the acquisition of same; together with all additions and accessions thereto and replacements thereof and proceeds therefrom (the Mortgagor hereby agreeing with respect to all additions, accessions, replacements and proceeds to execute and deliver from time to time such further instruments as may be requested by the Mortgagee to confirm and perfect the conveyance, transfer and assignment of any and all of the foregoing); all of the foregoing shall be deemed to be so permanently affixed

to the real property or to constitute real property under applicable law and shall be part of the security for the indebtedness herein mentioned and are secured, transferred and conveyed by this Mortgage.

All the foregoing property, interests and rights encumbered are sometimes collectively referred to herein as the "Premises" or "Property."

. TO HAVE AND TO HOLD the same, together with all the estate, right, title, interest, homestead, dower, right of dower, separate estate property, possession, claim, and demand whatsoever in law and in equity of the Mortgagor in and to the same and every part thereof, unto the Mortgagee, and the Mortgagee's legal representatives, heirs, successors and assigns, in fee simple, forever.

Mortgagor hereby covenants with the Mortgagee and with any purchaser at foreclosure sale hereunder that the Mortgagor is indefeasibly seized of the Premises in fee simple; that the Mortgagor has full power, lawful right, and authority to convey the Premises in fee simple as aforesaid; that it shall be lawful for the Mortgagee at all times hereafter peaceably and quietly to enter upon, hold, occupy, and enjoy the Premises and every part thereof; and that the Premises are free and clear of all liens and encumbrances except for the lien of ad valorem real property taxes not yet due and payable and those exceptions set forth in the Loan Policy of Title Insurance insuring the lien of this Mortgage issued by Chicago Title Insurance Company.

Mortgagor further covenants and agrees to make such other and further assurances to perfect the fee simple title to the Premises in the Mortgagee, or in any purchaser at foreclosure sale hereunder, as may hereafter be required by the Mortgagee.

Mortgagor grants to Mortgagee a security interest in all contracts for construction of improvements to be constructed by Mortgagor upon the Property, contracts with architects and/or engineers relating to construction of such improvements, and all construction plans, drawings and specifications, and any commitment rights from lenders for the furnishing of funds for construction of improvements on and to the Property. Mortgagor also grants to Mortgagee a security interest in all building materials and equipment, utility lines, mains, pipes, cables and fittings, of whatever description, now existing or coming into existence after date of this mortgage and security agreement, whether located on-site or off-site, designed or intended to be incorporated into the improvements or for the furnishing of water, sewer, gas, electrical or telephone utility services to the Property, together with any and all contract rights with any firm or corporation furnishing such utility services. The foregoing property rights are expressly made subject to the lien of this Mortgage so that Mortgagee, upon any default by Mortgagor, may complete the improvements to the Property. .

This Mortgage shall secure payment of all indebtedness evidenced and secured by the Loan Documents from time to time including, without limitation, all advances outstanding under letters of credit issued for the account of the Mortgagor. Additionally, this Mortgage shall secure all obligations incurred by the Mortgagor under any agreement between Mortgagor and Mortgagee or any affiliate of Mortgagee, including but not limited to an ISDA Master Agreement, whether now existing or hereafter entered into, which provides for an interest rate, currency, equity, credit or commodity swap, cap, floor or collar, spot or foreign currency

exchange transaction, cross currency rate swap, currency option, any combination or, or option with respect to, any of the foregoing or similar transactions, for the purpose of hedging the Mortgagor's exposure to fluctuations in interest rates, exchange ranges, currency, stock, portfolio or loan valuations or commodity prices.

It is agreed that any additional sum or sums advanced by the then holder of the Mortgage Note to the Mortgagor at any time within twenty (20) years from the date of this Mortgage, with interest thereon at the rate agreed upon at the time of each additional loan or advance, shall be equally secured with and have the same priority as the original indebtedness secured hereby and be subject to all of the terms and provisions of this Mortgage. Provided, however, that the aggregate amount of principal indebtedness outstanding at any one time shall not exceed an amount equal to six (6) times the original principal sum of the Mortgage Note secured hereby, and provided further that it is understood and agreed that this future advance provision shall not be construed to obligate the Mortgagee to make any such additional loans or advances.

PROVIDED ALWAYS and these presents are upon the express condition that if the Mortgagor shall pay to the Mortgagee all indebtedness from time-to-time evidenced and secured by the Loan Documents, and shall promptly and fully perform, execute and complete each and every covenant, agreement, obligation, condition and stipulation contained in the Loan Documents, then this Mortgage and the estate hereby created shall cease and be null and void; otherwise the same shall remain in full force and effect.

Mortgagor does hereby covenant and agree as follows:

1.     PERFORMANCE AND PAYMENT.  Mortgagor shall perform, observe and comply with all terms and conditions and agreements and covenants of Mortgagor contained in the Loan Documents and to timely pay all and singular the principal, interest, and other sums of money payable by virtue of the Loan Documents and to pay all other sums secured hereby promptly on the days the same become due, whether in due course or upon acceleration.

2.     SECURITY AGREEMENT AND FINANCING STATEMENT.  This Mortgage shall be construed as a mortgage of both real and personal property and it shall also constitute and serve as a "Security Agreement" within the meaning of and shall create a security interest under the Uniform Commercial Code of the State in which the Premises are located. This Mortgage shall also serve as a Financing Statement. The address for the Mortgagor (Debtor) and the Mortgagee (Secured Party) are set forth in the introductory paragraph of this Mortgage. The Mortgagor agrees to and shall execute and deliver to the Mortgagee, in form satisfactory to the Mortgagee, such other Financing Statements and such further assurances as the Mortgagee may, from time to time, consider necessary to create, perfect, and preserve the Mortgagee's liens upon any and all Property. The Mortgagee, at the expense of the Mortgagor, may cause such statements and assurances to be recorded and re-recorded, filed and re-filed, at such times and places, as may be required or permitted by law to create, perfect and preserve such liens. The Mortgagee shall have all the rights with respect to all property encumbered hereby afforded to the Mortgagee under the Uniform Commercial Code of the State in which the Premises are located, in addition to, but not in limitation of, the other rights afforded the Mortgagee by this Mortgage. The Mortgagor shall not transfer ownership of or remove from the lands herein described any of the tangible personal property which is encumbered by this Mortgage. In the

JAX\1263826_1

-6-

event ownership of any such tangible personal property is transferred or any of the same is removed by the Mortgagor, the same shall be replaced by other property which is free and clear of any lien or encumbrance held by any other person and such replacement property shall be of equal or better value than the property so transferred or removed. Such replacement property shall be encumbered by the lien of this Mortgage, and appropriate financing statements covering same shall be executed by the Mortgagor. For purposes of perfecting the security interest in personal property which is intended to become fixtures Mortgagor hereby certifies as follows:

(a) Durgama is a corporation, organized and existing under the laws of the State of Florida, and Durgama covenants and agrees that its status will remain active throughout the term of this Mortgage;

(b) Shree is a limited liability company, organized and existing under the laws of the State of Florida, and Shree covenants and agrees that its status will remain active throughout the term of this Mortgage;

(c) Mortgagor's address is as set forth on the first page of this Mortgage; and

(d) Mortgagor's organizational number is as set forth on the first page of this Mortgage.

Mortgagor authorizes Mortgagee to file a financing statement with the appropriate filing offices in the State in which Mortgagor is a registered organization, without Mortgagor's signature, further to perfect the security interests granted herein.

3. TAXES. Mortgagor shall pay prior to delinquency, and without requiring any notice from the Mortgagee, all and singular the taxes, assessments (general or special), levies, liabilities, obligations, judgments, rents, charges, statutory and common law liens, decrees, and encumbrances (referred to herein as "Assessments") of every nature and kind now on the Premises or that hereafter may be imposed, suffered, placed, levied or assessed thereupon, or that hereafter may be levied or assessed upon this Mortgage or upon the indebtedness secured hereby, and insofar as any of the same is of record the same shall be promptly satisfied and discharged of record and the original official document (such as the tax receipt or the satisfaction paper officially endorsed or certified) evidencing discharge shall be placed in the hands of the Mortgagee within ten (10) days after payment. After prior written notice to Mortgagee, Mortgagor, at its own expense, may contest by appropriate legal proceedings, promptly initiated and conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any Assessment; provided that: (i) in the case of any unpaid Assessment, such proceedings shall suspend the collection thereof from Mortgagor and from the Mortgaged Property, (ii) the Mortgaged Property or any part thereof will not be in danger of being sold, forfeited, terminated, canceled or lost, (iii) the use of the Mortgaged Property or any part thereof for its present or future intended purpose or purposes will not be interrupted, lost or terminated, (iv) Mortgagor shall have set aside adequate reserves with respect thereto, and (v) Mortgagor shall have furnished such security as may be required in the proceedings or as may be reasonably requested by Mortgagee.

4.   INSURANCE.   Mortgagor shall keep the Premises, including all buildings, improvements and building materials encumbered hereby, and the contents thereof, constantly and adequately insured as may be reasonably required from time to time by the Mortgagee against loss by fire and such other hazards, casualties, and contingencies as may be reasonably required by the Mortgagee, including without limitation, business interruption insurance covering loss of rents, revenues, income, profits or proceeds from the Premises or from leases, franchises, licenses, or concessions of all or any part of the Premises. Mortgagor shall obtain and maintain in force such other insurance coverage as Mortgagee may reasonably require, including but not limited to public liability insurance in the amount of $1,000,000.00. The Mortgagor shall pay promptly when due, all premiums upon all such insurance. All such insurance shall be carried in companies and under policies approved as to form by the Mortgagee. All such insurance policies and renewals thereof shall be assigned to and held by the Mortgagee as collateral and further security for the indebtedness secured hereby and shall have attached thereto loss payable clauses in favor of and in form acceptable to the Mortgagee, without contribution by the Mortgagee, pursuant to the New York standard or other mortgagee clause acceptable to the Mortgagee. The amount of coverage under such hazard insurance policies shall be actual replacement value of the Premises, with a minimum 90% co-insurance clause; and, in the event that the terms of any policies or renewals of insurance hereunder require the Mortgagor to file periodic statements of values or to take any other action to assure that it will not violate the minimum 90% co-insurance provision, then the Mortgagor shall promptly make such filings or take such other action as may be required to make such assurances. Mortgagor shall furnish to the Mortgagee annually, within at least fifteen (15) days prior to the anniversary date of each policy, with copies of an endorsement evidencing an agreed amount of insurance or similar document issued with respect to the policies evidencing that the Mortgagor will not become a co-insurer. Not less than fifteen (15) days prior to the expiration date of each such policy of insurance the Mortgagor shall deliver to the Mortgagee a renewal policy or policies marked "premium paid" or accompanied by other evidence of premium payment satisfactory to the Mortgagee. Such policies of insurance shall provide that the same may not be canceled except after thirty (30) days advance written notice of cancellation by the insurer to the Mortgagee. In the event of the foreclosure of this Mortgage, the purchaser of the Premises shall succeed to all the rights of the Mortgagor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to the Mortgagee pursuant to the provisions of this numbered paragraph. In the event of loss affecting all or any part of the Premises, the Mortgagor will give immediate notice thereof by mail to the Mortgagee. The Mortgagee may adjust or compromise any loss under any such hazard insurance policy and collect the proceeds therefrom. Each insurance company which issues any hazard insurance policy insuring the Premises or any part thereof is hereby authorized and directed to make payment for such loss directly to the Mortgagee instead of to the Mortgagor and the Mortgagee jointly, and the insurance proceeds, or any part thereof, after deducting expenses reasonably incurred in collecting same, may be applied by the Mortgagee, at its option, either to the reduction of the indebtedness hereby secured, whether or not then matured, or to the restoration or repair of the property damaged.

5.   TAX AND INSURANCE DEPOSITS.   If required by the Mortgagee, the Mortgagor shall pay to the Mortgagee on the first day of each month until the Mortgage Note is fully paid, a sum equal to the premiums that will next become due and payable on policies of insurance required under this Mortgage, plus the taxes, assessments and other charges next due

upon the Premises, all as estimated by the Mortgagee, less all sums already paid therefor, divided by the number of months to elapse before one (1) month prior to the date when each of such items will become payable. Such sums shall be held by the Mortgagee in escrow (but without liability of Mortgagee to pay interest thereon) to pay such insurance premiums, taxes, assessments, and other charges. The failure by the Mortgagor to make any such monthly payment as and when required under this numbered Paragraph shall constitute a default under the Mortgage. It is agreed, however, that Mortgagee shall not require monthly payments under this paragraph unless and until Mortgagor defaults in its obligations under the Loan Documents (whether or not such default is subsequently cured).

Mortgagor shall furnish to the Mortgagee, not later than fifteen (15) days after receipt by Mortgagor, an official statement of the amount of all insurance premiums, taxes, assessments, and other charges next payable. The Mortgagee shall pay such items to the extent of the then unused escrowed funds on hand therefor, as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such expenses.

If the total of the payments made by the Mortgagor under this numbered Paragraph shall exceed the amount of expenses actually paid by the Mortgagee for the purposes set forth herein, the Mortgagee shall credit such excess on subsequent payment to be made under this numbered Paragraph by the Mortgagor or shall refund such excess to the Mortgagor at the option of the Mortgagee. If, however, the monthly payments to be made under this numbered Paragraph by the Mortgagor shall not be sufficient to pay such items when the same shall become payable, then the Mortgagor shall pay to the Mortgagee any amount necessary to make up the deficiency five (5) days after notice. If at any time the Mortgagor shall tender to the Mortgagee, in accordance with the provisions of the Mortgage Note secured hereby, full payment of the entire indebtedness represented thereby, the Mortgagee, in computing the amount of such indebtedness, and shall credit to the account of the Mortgagor any balance remaining in the funds so accumulated in escrow. The amount of the existing credit under this numbered Paragraph at the time of any transfer of the Premises shall, without the necessity for a separate assignment thereof or agreement relating thereto inure to the benefit of the successor-owner of the Premises and shall be applied under and be subject to all of the provisions of this numbered Paragraph. If there shall be a default under any of the provisions of this Mortgage resulting in a public sale of the Premises, or if the Mortgagee acquires the Premises otherwise after default, the Mortgagee may apply, at the time of the commencement of such a proceeding or at the time the Premises are otherwise acquired, the balance then remaining in escrow accumulated hereunder as a credit against the indebtedness remaining unpaid under the Mortgage Note.

6. FORECLOSURE AND OTHER EXPENSES. Mortgagor shall pay all and singular the costs, fees, and expenses of every kind and nature, including the Mortgagee's reasonable attorney's fees (including on appeal) and the cost of title evidence incurred or expended at any time by the Mortgagee in the collection of Mortgage debt and/or foreclosure on the Mortgage Note and Mortgage or otherwise incurred in protecting and preserving the lien of this Mortgage or in enforcing Mortgagee's rights under this Mortgage or under any other instrument evidencing and/or securing the indebtedness secured hereby, or in enforcing, sustaining, protecting, or defending the lien or priority of this Mortgage against any and all persons including, but not limited to, lien claimants or the exercise of the power of eminent

domain or other governmental power of any kind. Every such payment made by or on behalf of the Mortgagee shall be immediately due and payable by the Mortgagor to the Mortgagee and shall bear interest from the date of disbursement thereof by the Mortgagee at the rate per annum then applicable under the Mortgage Note to sums of principal then outstanding and the same, together with such interest, shall be secured by the lien hereof. Nothing contained in this numbered Paragraph shall be construed as requiring the Mortgagee to advance or spend money for any of the purposes mentioned in this numbered Paragraph.

7.     CARE OF PROPERTY. Mortgagor shall: permit, commit, or suffer no waste, impairment, or deterioration of the Premises or any part thereof and shall take all necessary steps to prevent same; permit, commit or suffer no mining, drilling, removal of sand, gravel, loam, or other materials, or excavations in, on or under the Premises, except excavations incident to construction of improvements on the Premises; keep the buildings and other improvements now or hereafter constituting a part of the Premises in as nearly as possible the same order and condition or repair as they now are or as they may be when placed upon the Premises, normal wear and tear excepted; do or permit to be done to the Premises nothing that will in any respect impair or weaken the security of this Mortgage in the reasonable opinion of the Mortgagee; and comply with, or cause to be complied with, all statutes, ordinances, regulations, and requirements of any governmental authority affecting the Premises or any part thereof or affecting the operation thereof. The Mortgagor shall promptly repair, restore, replace, or rebuild any part of the Premises, now or hereafter existing, which may be damaged or destroyed by fire or other casualty or which may be affected by any eminent domain proceedings or other governmental taking, but only to the extent that any insurance proceeds or condemnation awards resulting from such events have not been applied to the reduction of the indebtedness hereby secured. If any work required under this numbered Paragraph shall involve an estimated expenditure exceeding One Hundred Thousand and 00/100 Dollars ($100,000.00), no such work shall be carried out except pursuant to plans and specifications approved by the Mortgagee in its reasonable discretion. No part of the Premises shall be removed, demolished, or materially altered without the written consent of the Mortgagee. No timber or other forest products shall be harvested or removed from the Premises without the Mortgagee's written consent. The Mortgagor shall not grant, join in, seek or consent to any right-of-way, easement, license, restrictive covenant, zoning ordinance, or other public or private restriction which affects or limits or defines the use which may be made of the Premises or any part thereof, and shall not grant, join in, seek or consent to any modification of any of the foregoing without the written consent of the Mortgagee.

Mortgagee may determine, in its reasonable discretion, whether the foregoing portions of this numbered Paragraph are being complied with and, for this purpose, the Mortgagee shall have the right to inspect the Premises at any reasonable hour of the day. In the event Mortgagee determines in its inspection that Mortgagor is violating the provisions of this Paragraph by deferring maintenance on the mortgaged premises, Mortgagee shall have the right to require Mortgagor to escrow with Mortgagee such funds as are necessary to correct said deferred maintenance.

8.     PERFORMANCE OF LEASES. Mortgagor shall perform the covenants of the Mortgagor as lessor under any present and future leases affecting all or any part of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the

JAX\1263826_1                                    -10-

rents provided for therein, or the interest of the Mortgagor or the Mortgagee therein or thereunder. The Mortgagor without first obtaining the written consent of the Mortgagee thereto, shall not: assign the rents from the Premises or any part thereof; consent to the modification, cancellation or surrender of any lease or sublease of the Premises, or any part thereof, now existing or hereafter to be made, having an unexpired term of one (1) year or more; collect rents from the Premises or any part thereof, for more than two (2) months in advance; or enter into a lease which provides for rent based in whole or in part on the net income, net profits or net sales of any such lessee or sub-lessee. The Mortgagor shall procure and deliver to the Mortgagee at any time within thirty (30) days after notice and demand from Mortgagee, estoppel letters or certificates from each lessee, tenant, or occupant in possession of the Premises, as required by, and in form and substance satisfactory to the Mortgagee. The Mortgagor shall, upon request by the Mortgagee, furnish to the Mortgagee accurate copies of all leases affecting the Premises or any part thereof.

9. ASSIGNMENT OF RENTS. As additional security, the Mortgagor does hereby transfer, assign, and set over to the Mortgagee all of the Mortgagor's interest as lessor in any and all present and future leases, and any and all rents, issues and profits arising out of or accruing from the Premises, now due or to become due from the Premises or any separate rental premises therein contained. In the event of a default hereunder by the Mortgagor, this assignment shall be absolute and become operative upon written demand from Mortgagee. Such rents shall be collected by or at the direction and under the control of the Mortgagee and the net proceeds thereof (net after payment of collection costs) shall be applied to the indebtedness secured hereby in such manner as the Mortgagee elects, as and when the same shall become due and payable. For the purpose of carrying out the provisions of this Paragraph, the Mortgagor does by these presents constitute and appoint the Mortgagee as the Mortgagor's true and lawful attorney-in-fact, to collect any and all rents from the Premises, expressly authorizing the Mortgagee to receipt tenants therefor, and does by these presents ratify and confirm any and all acts of such attorney-in-fact in relation to the foregoing.

10. ASSIGNMENT OF CONDEMNATION AWARDS. Mortgagor hereby transfers, assigns, and sets over to the Mortgagee, up to the amount of the total indebtedness secured hereby, all awards of damages arising and all other sums paid or which become payable in connection with the condemnation of all or any part of the Premises for public use or for injury to any part thereof by any governmental body, quasi-public authority, or public utility, and the proceeds of all such awards, after payment of all reasonable expenses incurred in recovering same, including fees for attorneys representing the Mortgagee in any proceeding in which any such award is made, shall be paid to the Mortgagee. Notwithstanding any taking of all or any part of the Premises by eminent domain, or other injury to, or decrease in value of, the Premises by any governmental body, quasi-public authority, or public utility, the Mortgagor until such time as the mortgage debt is paid in full shall continue to pay and perform the obligations of this Mortgage and of the Mortgage Note secured hereby in the manner therein provided. Such awards or payments may, at the option of Mortgagee, be retained and applied by the Mortgagee toward payment of the indebtedness secured hereby in the manner designated by the Mortgagee, or be paid over, wholly or in part, to the Mortgagor for the purpose of altering, restoring, or rebuilding any part of the Premises which may have been altered, damaged, or destroyed as a result of any such taking, or other injury to the Premises. If, prior to the receipt by the Mortgagee of any such award or payment, the Premises shall have been sold on foreclosure of

JAX\1263826_1                                    -11-

this Mortgage, the Mortgagee shall have the right to receive and retain such award or payment for application towards payment of any deficiency judgment which may be entered in favor of Mortgagee, together with interest applicable as set forth in the Mortgage Note thereon, and to the extent of the reasonable attorney fees (including on appeal), costs, and disbursements incurred by the Mortgagee in connection with the collection of such award or payment, and such right shall exist whether or not a deficiency judgment shall have been sought or recovered or denied upon the Mortgage Note, and the balance of such award or payment shall inure to the benefit of the party entitled thereto by applicable law.

11.    FURTHER DOCUMENTS AND ESTOPPEL CERTIFICATES.  Mortgagor shall execute and deliver to the Mortgagee, from time to time, upon demand, and pay the reasonable costs of preparation and recording thereof, any further instrument or instruments, including, but not limited to, mortgages, security agreements, financing statements, assignments, and renewal and substitution notes, so as to reaffirm, to correct, and to perfect the evidence of the obligations secured hereby and the security title of the Mortgagee to all or any part of the Premises intended to be hereby mortgaged, whether now mortgaged, later substituted for, or acquired subsequent to the date of this Mortgage and any extensions or modifications hereof. The Mortgagor, from time to time, upon request, shall certify by a writing, duly executed under oath, to the Mortgagee or to any actual or proposed assignee of this Mortgage, or to any other person, firm, or corporation specified by the Mortgagee, within ten (10) days after the mailing of such request to the Mortgagor, the following:

(a)    That the Mortgage Note secured hereby, this Mortgage, and all other instruments given to secure the indebtedness secured hereby are unmodified and in full force and effect, and if there has been some modification, that the same is in full force and effect as modified and stating the modification;

(b)    The dates, if applicable, to which interest on the Mortgage Note and the taxes, insurance premiums, and other charges payable hereunder have been paid;

(c)    Whether the Mortgagor, to the best of the Mortgagor's knowledge and belief, is in default in the performance of any covenant, condition, or agreement on the Mortgagor's part to be performed under the terms of the Loan Documents, and, if so, stating specifically and in what manner or manners such default exists;

(d)    Whether or not any offsets or defenses exist against the Loan Documents and, if so, the specific nature and amounts thereof;

(e)    The amount of principal and interest then due and owing on the indebtedness evidenced and secured by the Loan Documents; and

(f)    Such other matters as the Mortgagee may reasonably request.

12.    DEFAULT.  The occurrence of any one or more of the following events shall constitute a default under this Mortgage and the other Loan Documents:

(a)    Should the Mortgagor fail to make any payment payable by virtue of the Mortgage Note or the other Loan Documents within ten (10) days after the due date therefor;

JAX\1263826_1                                      -12-

(b)    Should any representation or warranty of the Mortgagor or the Guarantor herein contained, or contained in any of the Loan Documents, prove to be untrue or misleading in any material respect when made;

(c)    Should the Premises be subject to actual waste, or any part thereof be removed, demolished, or materially altered so that the value of the Premises be diminished, without Mortgagee's consent, except as a result of eminent domain proceedings;

(d)    Should any federal, state, or local tax lien, or any claim of lien for labor or materials, or any other lien, encumbrance, mortgage or other security instrument or judgment be filed of record against the Premises and not be removed by payment or transferred to bond in the manner provided by law within thirty (30) days from the date of recording;

(e)    Should any claim of priority to this Mortgage by title, lien, or otherwise be asserted in any legal, administrative, or equitable proceeding, and said claim remain pending in excess of sixty (60) days;

(f)    Should the Mortgagor or any Guarantor make any assignment for the benefit of creditors, file a petition in bankruptcy, is adjudicated insolvent or bankrupt, petitions or applies to any tribunal for any receiver of or trustee for it or any substantial part of its property, commences any proceeding under any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect;

(g)    There is commenced against Mortgagor or any Guarantor under any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect by any such act any proceeding which remains undismissed for a period of sixty (60) days;

(h)    Should the Mortgagor fail to maintain its existence in good standing;

(i)    The death of any Guarantor;

(j)    Should Mortgagor default in the performance of any of the covenants, agreements and obligations of Mortgagor under the terms and conditions of this Mortgage, which default is not otherwise the subject matter of any other subparagraphs in this Paragraph 12, and such default is not curable, or if curable, continues for a period of thirty (30) days after notice of such default is delivered by Mortgagee to Mortgagor; or

(k)    Mortgagor or Guarantor defaults in the performance of any of its obligations under any of the other Loan Documents and such default continues after all applicable notice and cure periods, if any.

13.    REMEDIES UPON DEFAULT. Upon default, Mortgagee shall have the right to:

(a)    Take any action deemed expedient by the Mortgagee to protect the security of this Mortgage or to cure any default hereunder;

(b)    Declare all amounts evidenced and secured by the Loan Documents immediately due and payable without notice;

(c)    Foreclose this Mortgage in the manner provided by applicable law. Mortgagor hereby waives all rights of marshalling in the event of foreclosure of any lien or security interest created by this Mortgage. Further, in the event of foreclosure of any lien or security interest created by this Mortgage, Mortgagee may apply such foreclosure proceeds, in Mortgagee's sole discretion, to the debt secured by this Mortgage in any order and in any fashion whatsoever; and

(d)    Apply to a court of competent jurisdiction, for the appointment of a receiver to take charge of, manage, preserve, protect, complete construction of and operate the Premises and any business or businesses located thereon; to collect the assigned rents, issues, profits and income therefrom; to make all necessary and needed repairs to the Premises; to pay all taxes and assessments against the Premises and insurance premiums for insurance thereon; and after the payment of the expense of the receivership, including reasonable attorney's fees to the Mortgagee's attorney, and after compensation to the receiver for management and completion of the Premises, to apply the net proceeds derived therefrom in reduction of the indebtedness secured hereby or in such manner as such court shall direct. Mortgagor hereby consents and agrees to the appointment of such receiver after default, regardless of the value of the security for the indebtedness secured hereby or of the solvency of any party bound for the payment of such indebtedness. All expenses, fees and compensation incurred in connection with such receivership, shall be secured by the lien of this Mortgage until paid. The receiver and the receiver's agents shall be entitled to enter upon and take possession of any and all of the Premises, together with any and all businesses conducted thereon and all business assets used in conjunction therewith or thereon, or any part or parts thereof, and operate and conduct such business or businesses to the fullest extent allowed by law and by the provisions of the order appointing receiver.

14.    TAXES UPON MORTGAGE, ETC. In the event of the passage or adoption of any law, or in the event of any decision by a court of competent jurisdiction, creating or providing for any tax, assessment, or charge against the Premises, against this Mortgage, or against the indebtedness on undertakings secured hereby, or against any interest of the Mortgagee in the Premises, then, unless such tax be promptly paid by the Mortgagor and, in any event, if payment of such tax by the Mortgagor is prohibited by law, the entire indebtedness secured hereby shall, at the option of the Mortgagee, become immediately due and payable and, in the event payment of such indebtedness is not made by the Mortgagor within thirty (30) days after demand for payment, the Mortgagee may take, or cause to be taken, such action or proceeding as may be taken hereunder in the case of any other default in the payment of the indebtedness secured hereby; provided, that in respect to any taxes on the Mortgagee's interest in the Premises, or in this Mortgage, or in the indebtedness secured hereby, the Mortgagor shall not be required or bound to pay any amount which together with interest on the indebtedness secured, shall exceed the maximum interest rate allowed by applicable and enforceable law.

15.    TIME IS OF THE ESSENCE OF THIS MORTGAGE. No waiver of any obligation hereunder or of any obligation secured hereby shall at any time thereafter be held to be a waiver of the terms hereof or of the terms of the Mortgage Note secured hereby.

JAX\1263826_1                                   -14-

16. RIGHTS CUMULATIVE. The rights of the Mortgagee granted and arising under the Loan Documents shall be separate, distinct, and cumulative of other powers and rights herein granted and of all other rights which the Mortgagee may have in law or equity, and none of them shall be in exclusion of any other. No act of the Mortgagee shall be construed as an election to proceed under any provision of the Loan Documents to the exclusion of any other provisions, or an election of remedies to the bar of any other remedy allowed in law or equity.

17. NOTICE. All notices required herein or under the terms of any of the Loan Documents shall be in writing. Whenever any notice, demand or request is required or permitted hereunder, such notice, demand or request shall be hand-delivered personally or sent by reputable overnight courier service (such as Federal Express) or certified mail by the United States Postal Service to the addresses set forth in the introductory paragraph of this Mortgage. Any notice or demand to be given hereunder shall be deemed sufficiently given for all purposes hereunder (1) at the time such notices or demands are hand-delivered, or (2) one day after depositing any such notice or demand with any reputable overnight courier service, or (3) three days after depositing any such notice or demand by certified mail with the United States Postal Service. Any party hereto may change its address by notice in writing to the other parties in the manner herein provided.

18. RELEASES BY MORTGAGEE. Mortgagee may, from time to time, without notice to any person and without affecting the liability of the Mortgagor or of any other person (other than any person expressly released by the Mortgagee in writing) for the payment of any indebtedness secured hereby or for the performance of any obligation contained herein, and without affecting the priority or extent of the lien of this Mortgage (except as to property specifically released by the Mortgagee in writing) do any of the following:

(a) Release, voluntary or by operation of law, any person liable for payment of any indebtedness secured hereby or for performance of any obligation provided for herein;

(b) Accept additional security of any kind;

(c) Consent to the creation of any easement in, on, or over the Premises or any covenant restricting the use or occupancy of the Premises; and

(d) Release or otherwise deal with any property, real or personal, which secures the indebtedness secured hereby, including, without limitation, all or any part of the Premises.

19. CHANGE OF OWNERSHIP; ADDITIONAL ENCUMBRANCES. Except as contemplated by paragraph 35 of this Mortgage, if all or any part of the Property or an interest therein is sold, transferred or further encumbered (including the granting of any leasehold interest by Mortgagor), by Mortgagor without Mortgagee's prior written consent or if any ownership interest in Mortgagor is sold, transferred or further encumbered by Mortgagor without Mortgagee's prior consent, it shall constitute a default under the Mortgage and Mortgagee may, at its option, declare all the sums secured by this Mortgage to be immediately due and payable.

20. SINGLE PURPOSE ENTITY. Mortgagor has not and shall not: (a) engage in any business or activity other than the ownership, operation and maintenance of the Property, and

activities incidental thereto; (b) acquire or own any material assets other than (i) the Property and (ii) such incidental Personal Property as may be necessary for the operation of the Property; (c) merge into or consolidate with any person or entity or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure, without in each case Mortgagee's consent; (d) fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, or without the prior written consent of Mortgagee, amend, modify, terminate or fail to comply with the provisions of Mortgagor's Operating Agreement, Articles of Organization, Partnership Agreement, Articles or Certificate of Incorporation or similar organizational documents, as the case may be, as same may be further amended or supplemented, if such amendment, modification, termination or failure to comply would adversely affect the ability of Mortgagor to perform its obligations hereunder, under the Note or under the Other Security Documents; (e) own any subsidiary or make any investment in, any person or entity without the consent of Mortgagee; (f) commingle its assets with the assets of any of its members, affiliates, principals or of any other person or entity; (g) incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the Loan, except in the ordinary course of its business of owning and operating the Property, provided that such debt is paid when due and is not a debt for borrowed money or evidenced by a promissory note; (h) become insolvent and fail to pay its debts and liabilities from its assets as the same shall become due; (i) fail to maintain its records, books of account and bank accounts separate and apart from those of the general partners, members, principals and affiliates of Mortgagor, the affiliates of a general partner or member of Mortgagor, and any other person or entity; (j) enter into any contract or agreement with any general partner, member, principal or affiliate of Mortgagor, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any general partner, member, principal or affiliate of Mortgagor; (k) seek the dissolution or winding up in whole, or in part, of Mortgagor; (l) maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any general partner, member, principal or affiliate of Mortgagor, or any general partner, member, principal or affiliate thereof or any other person; (m) hold itself out to be responsible for the debts of another person; (n) make any loans or advances to any third party, including any general partner, member, principal or affiliate thereof; (o) fail to file its own tax returns as required by applicable law; (p) fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or person or to conduct its business solely in its own name in order not (i) to mislead others as to the identity with which such other party is transacting business, or (ii) to suggest that Mortgagor is responsible for the debts of any third party (including any general partner, member, principal or affiliate thereof); (q) fail to maintain adequate capital for the normal obligations reasonable foreseeable in a business of its size and character and in light of its contemplated business operations and provided there is adequate capital from the operation of the Property to do so; (r) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors; or (s) change its name or entity type without first providing thirty (30) days prior written notice to Mortgagee.

Without limitation to the foregoing provisions of this paragraph, Mortgagor will not amend and will not permit any other person or entity to amend the provisions of Mortgagor's

Operating Agreement relating to its single purpose entity covenants made herein. Additionally, pursuant to Mortgagor's Operating Agreement, the unanimous consent of the members of the Mortgagor must be required to file, or consent to the filing of, a bankruptcy or insolvency petition or otherwise institute insolvency proceedings.

In the event any Mortgagor is not a "single-member" limited liability company complying with the provisions of this paragraph, the foregoing covenants in this paragraph shall also apply to the general partner or managing member of such Mortgagor (the "Controlling Party"), provided that all references to "Property" therein shall be deemed to refer to the interest of the Controlling Party in such Mortgagor.

Upon the occurrence of any event that causes a current member (a "Member") to cease to be a member of Mortgagor, to the fullest extent permitted by law, the personal representative of Member shall, within ninety (90) days after the occurrence of the event that terminated the continued membership of Member in Mortgagor, agree in writing (i) to continue Mortgagor and (ii) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of Mortgagor, effective as of the occurrence of the event that terminated the continued membership of Member in Mortgagor. Any action initiated by or brought against Member under any insolvency, bankruptcy, liquidation or reorganization laws shall not cause Member to cease to be a member of Mortgagor and upon the occurrence of such an event, the business of Mortgagor shall continue without dissolution. Mortgagor's Operating Agreement shall provide that each of Member waives any right it might have to agree in writing to dissolve Mortgagor upon the occurrence of any action initiated by or brought against Member under any insolvency, bankruptcy, liquidation or reorganization laws, or the occurrence of an event that causes Member to cease to be a member of Mortgagor.

21. SUCCESSORS AND ASSIGNS. All covenants and stipulations in these presents contained shall bind the heirs, executors, administrators, legal representatives, successors, and assigns, as the case may be, of the Mortgagor and shall inure to the benefit of and be available to the successors and assigns of the Mortgagee.

22. GOVERNING LAW. The terms and provisions of this Mortgage and of the other loan documents are to be governed by the laws of the State of Florida and the United States of America and in the event of a conflict, the law of the United States of America shall control.

23. SEVERABILITY. If any provision of this Mortgage, or the other Loan Documents shall to any extent be finally found by a court of competent jurisdiction to be invalid or unenforceable, neither the remainder of the instrument in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other instrument referred to herein, shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law or equity.

24. DEFENSE OF ACTIONS BY MORTGAGOR. Mortgagor shall, at its own cost and expense, defend, indemnify and hold Mortgagee and the lien of this Mortgage harmless from any action, proceeding or claim affecting the Premises or affecting the indebtedness secured hereby. If Mortgagor neglects or refuses to carry out the covenants contained in this paragraph, the Mortgagee at its option may afford such defense and pay reasonable attorneys' fees, costs

and expenses incurred in any such defense at trial or appellate or in private settlement proceedings. All such payments, plus interest thereon from the time of payment at the rate applicable under the Mortgage Note upon sums outstanding thereunder after maturity shall be deemed a part of the indebtedness secured hereby and shall be immediately due and payable by the Mortgagor to the Mortgagee.

25. SINGULAR, PLURAL, ETC. As used herein, the terms "Mortgagor" and "Mortgagee" shall include the singular and the plural, and shall include the masculine, feminine and neuter genders. The plural shall include the singular, and the singular shall include the plural in all applicable instances.

26. CURING OF DEFAULTS BY MORTGAGEE. Mortgagee shall have the right, but not the duty, to pay any sums required to be paid and to take any other action deemed by the Mortgagee to be necessary or convenient to cure any default of the Mortgagor under this Mortgage. Any and all sums expended or expenses incurred by the Mortgagee in so curing defaults shall become immediately due and payable by the Mortgagor to the Mortgagee and, together with interest thereon from date of disbursement at the rate applicable to sums outstanding under the Mortgage Note from and after the maturity date therein contained and shall be secured by the lien of this Mortgage. The Mortgagee shall be subrogated to the interest of any lien holder paid by Mortgagee pursuant to the provisions of this paragraph.

27. ACTION ON MORTGAGE NOTE. Mortgagee shall be entitled to sue and recover judgment upon the Mortgage Note either before, after, or during the pendency of any proceeding for the enforcement of this Mortgage. The Mortgagor agrees that no recovery of a judgment upon the Mortgage Note, and no attachment or levy of any execution upon any such judgment upon any of the Premises, shall in any manner, or to any extent, affect the lien of this Mortgage or any of the rights, powers, or remedies of the Mortgagee hereunder.

28. WAIVER. No delay or omission by the Mortgagee to exercise any right, power or remedy accruing upon any default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such default or acquiescence therein. Every right, power and remedy given by this Mortgage to the Mortgagee may be exercised from time to time and as often as may be deemed expedient by the Mortgagee. No waiver of any default hereunder shall extend to or shall affect any subsequent or any other then existing default or shall impair any right, power or remedy consequent thereon.

29. MODIFICATIONS, ETC. ONLY IN WRITING. This Mortgage may not be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.

30. BOOKS AND RECORDS. Mortgagor shall maintain full and correct books and records showing in detail the income, expenses and earnings relating to the Premises, and to permit Mortgagee's representative to examine such books and records and all supporting vouchers and data at any time and from time to time as the Mortgagee may reasonably request at such place within the United States of America as such books and records are customarily kept. Additionally, Mortgagor shall submit, or cause to be submitted, to the Mortgagee such additional financial information as may be required pursuant to the terms of the Loan Agreement.

JAX\1263826_1                                    -18-

31.   JOINT AND SEVERAL OBLIGATIONS.  All agreements herein made by the Mortgagor are binding upon and enforceable against the persons named herein as Mortgagor jointly and severally.

32.   NO ILLEGAL INTEREST TO BE CHARGED.  All agreements between the Mortgagor and the Mortgagee under the Loan Documents are expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to the holder of the Mortgage Note for the use, forbearance or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under applicable law.  If, from any circumstances whatsoever, fulfillment of any provisions of the Loan Documents, at the time performance of such provision shall be due, shall involve payment of interest at a rate which exceeds the highest lawful rate as so determined, then ipso facto the obligation to be fulfilled shall be reduced to such highest lawful rate.  If, from any circumstances whatsoever, the holder of the Mortgage Note secured hereby shall ever receive interest, the amount of which would exceed such highest lawful rate, the portion thereof which would be excessive interest shall be deemed applied to the reduction of the unpaid principal balance due under such Mortgage Note and not to the payment of interest or handled as otherwise provided by law.

33.   STORAGE/USE OF POLLUTANTS, CONTAMINANTS, HAZARDOUS OR TOXIC SUBSTANCES.  Mortgagor hereby represents and warrants to Mortgagee to the best of its knowledge, based upon a diligent review of all applicable records, history of use of the Property and adjacent properties and environmental audits, if necessary, that: (a) no pollutants, contaminants, or hazardous or toxic substances, including, but not limited to, oil, petroleum, petroleum by product, chemical liquids or solids, liquid or gaseous products, within the meaning of any applicable statute or regulation (hereinafter sometimes referred to as "Substances"), are presently stored or otherwise located on or under the Property or on or under any adjacent and contiguous real property owned by Mortgagor or any related entity or affiliate of Mortgagor; (b) no release or discharge of any Substances has occurred on the Property or on any adjacent and contiguous real property owned by Mortgagor or any related entity or affiliates of Mortgagor; (c) no part of the Property or any adjacent and contiguous real property owned by Mortgagor or any related entity or affiliate of Mortgagor, including the groundwater located thereon, is presently contaminated by such Substances; and (d) Mortgagor has not received any notice from any governmental agency or authority or from any tenant under a lease with respect to any release or discharge of such Substances onto the Property or adjacent parcels of real estate.  Mortgagor further covenants and agrees with Mortgagee that, throughout the term of the Mortgage Note (i) all pollutants, contaminants, or hazardous or toxic substances, including, but not limited to, oil, petroleum, petroleum by product, chemical liquids or solids, liquid or gaseous products, within the meaning of any applicable statute or regulation, which may be used by any person for any purpose upon the Property, shall be used or stored thereon only in a safe and approved manner, in accordance with all industrial standards and all laws, regulations and requirements for storage, use, treatment and disposal promulgated by any applicable governmental agency or authority; (ii) other than as described in (i) above, the Property will not be used for the purpose of storing such Substances; and (iii) other than as described in (i) above, no such storage or use will otherwise be allowed on the Property which will cause, or which will increase the likelihood of causing, the release of such Substances onto the Property.  Mortgagor hereby agrees to indemnify and save and hold Mortgagee harmless of and from all loss, cost (including reasonable attorney's fees, fines, penalties and permit fees), liability and damage whatsoever incurred by Mortgagee arising

JAX\1263826_1                                   -19-

out of or by reason of any violation of any applicable statute or regulation for the protection of the environment which occurs upon the Property, or by reason of the imposition of any governmental lien for the recovery of environmental clean-up costs expended by reason of such violation; provided that, to the extent that Mortgagee is strictly liable under any such statute or regulation, Mortgagor's obligation to Mortgagee under this indemnity shall likewise be without regard to fault on the part of Mortgagor with respect to the violation of law which results in liability to Mortgagee. A default under this paragraph shall constitute an Event of Default under this Mortgage.

34. APPRAISALS. Mortgagor covenants and agrees that Mortgagor shall furnish an appraisal of the Property when required by the regulations of the Federal Reserve, the Federal Deposit Insurance Corporation or any other agency which regulates Mortgagee, or at such other times as the Mortgagee may reasonably require. Such appraisal or appraisals shall be performed by an independent third party appraiser selected by the Mortgagee. The cost of such appraisal shall be paid by the Mortgagor. If requested by the Mortgagee, the Mortgagor shall execute an engagement letter addressed to the appraiser selected by the Mortgagee; provided, however, that Mortgagor's failure or refusal to sign such engagement letter shall not impair Mortgagee's right to obtain such appraisal. Mortgagor shall pay the cost of such appraisal within ten days after receipt of an invoice for such appraisal.

35. PARTIAL RELEASES. As set forth in paragraph 4 of the Loan Agreement, Mortgagor shall have the right to request that Mortgagee release Parcel 1 of the Property from the lien of this Mortgage (such portion sought to be released shall be referred to as the "Release Parcel"), and Mortgagor shall be entitled to such release under this paragraph if the following conditions are fully satisfied at the time such release is requested:

(a) Mortgagee's security to secure the unpaid indebtedness will not be impaired in the sole opinion of Mortgagee.

(b) There is no default in the Mortgage Note secured hereby or in this Mortgage, nor shall any event have occurred which with notice and/or passage of time could result in a default under the Mortgage Note or this Mortgage.

(c) Access, ingress and egress and the availability of utility services to any unreleased portions of the Property remains acceptable to Mortgagee in its reasonable opinion.

(d) All costs of preparing and recording such partial releases are paid by Mortgagor.

36. CROSS DEFAULT/CROSS-COLLATERALIZATION. Mortgagee has also made a loan to Mortgagor's affiliate, Jai Ambaji Corporation, a Delaware corporation ("Jai Ambaji"), in the original principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) (the "Additional Loan"), which is secured by that certain Amended and Restated Leasehold Mortgage and Security Agreement, dated of even date herewith and recorded simultaneously herewith in the public records of St. Johns County, Florida (the "Additional Mortgage"), encumbering certain real property located at 2550 State Road 16, St. Augustine, Florida 32092. The Additional Loan is evidenced by that certain Renewal Promissory Note

JAX\1263826_1                                      -20-

Including Future Advance in favor of Mortgagee in the original principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) (the "Additional Note"). In addition to securing the payment and performance by the Mortgagor of the Mortgagor's obligations under the Loan Documents, this Mortgage shall also secure the repayment by Jai Ambaji of all principal, interest and others sums due by Jai Ambaji to Mortgagee pursuant to the terms of the Additional Note, and the Additional Mortgage shall also secure the repayment by Mortgagor of all principal, interest and other sums due by Mortgagor to Mortgagee pursuant to the terms of the Loan Documents. Furthermore, should Jai Ambaji default in the performance of its obligations under the Additional Note, then such default shall be considered a default by the Mortgagor under the terms of this Mortgage and the Mortgage Note, and should the Mortgagor default in the performance of its obligations under the Mortgage Note, then such default shall be considered a default by Jai Ambaji under the terms of the Additional Note and Additional Mortgage.

37. WAIVER OF JURY TRIAL. MORTGAGOR AND MORTGAGEE, JOINTLY AND SEVERALLY, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS, WHETHER VERBAL OR WRITTEN, OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE ACCEPTING THIS MORTGAGE FROM MORTGAGOR.

IN WITNESS WHEREOF, Mortgagor has duly signed, sealed and executed this mortgage in the presence of the subscribing witnesses the day and year first above written.

Signed, sealed and delivered
in the presence of:

"MORTGAGOR"

DURGAMA, INC., a Florida corporation

Name: _____

By: _____
Name: Narendra Patel
Title: President

Name: _____VICKI L. CROSS_____

Address: 1300 N. Ponce de Leon Boulevard
St. Augustine, Florida 32084

(Corporate Seal)

SHREE-SHIVJI, LLC, a Florida limited
liability company

By: _____

Name: _____

Name: Narendra Patel

Title: President

Name: _____VICKI L. CROSS_____

Address: 1300 N. Ponce de Leon Boulevard
St. Augustine, Florida 32084

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 13th day of November, 2008 by Narendra Patel the President of DURGAMA, INC., a Florida corporation, and the President of SHREE-SHIVJI, LLC, a Florida limited liability company, on behalf of the corporation and company. He *(check one)* ☐ is personally known to me or ☒ has produced a valid driver's license as identification.

_____
Notary Public, State and County Aforesaid
Name: _____
My Commission Expires: Vicki L. Cross
My Commission Number: Commission # DD376165
Expires January 21, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

## CONSENT AND JOINDER

Jai Ambaji Corporation, a Delaware corporation ("Jai Ambaji"), by its execution hereof, joins in this Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement (the "Mortgage") to acknowledge its consent and agreement to be bound by the terms of the Mortgage and its obligations, representations and warranties hereunder.

IN WITNESS WHEREOF, Jai Ambaji has duly signed, sealed and executed this Mortgage in the presence of the subscribing witnesses the day and year first above written.

Signed, sealed and delivered
in the presence of:

"JAI AMBAJI"

JAI AMBAJI CORPORATION, a Delaware corporation

Name: _____

By: _____
Name: Narendra Patel
Title: President

Name: __VICKI L. CROSS__

Address: 1300 N. Ponce de Leon Boulevard
St. Augustine, Florida 32084

(Corporate Seal)

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 13th day of November, 2008 by Narendra Patel the President of JAI AMBAJI CORPORATION, a Delaware corporation, on behalf of the corporation. He *(check one)* ☐ is personally known to me or ☑ has produced a valid driver's license as identification.

_____
Notary Public, State and County Aforesaid
Name: _____
My Commission Expires _____
My Commission Number _____

Vicki L. Cross
Commission # DD376165
Expires January 21, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

Signed, sealed and delivered
in the presence of:

"MORTGAGEE"

HAVEN TRUST BANK FLORIDA, a Florida
banking corporation

Name: _____

By: _____
Name: Scott Gilpin
Title: Vice President

Name: VICKI L. CROSS

Address: 212 Ponte Vedra Park Drive
Ponte Vedra Beach, FL 32082

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 13th day of November, 2008 by Scott Gilpin, the Vice President of HAVEN TRUST BANK FLORIDA, a Florida banking corporation, on behalf of the bank. He *(check one)* ☑ is personally known to me, or ☐ has produced a valid driver's license as identification.

Notary Public, State and County Aforesaid
Name: _____ Vicki L. Cross
My Commission Expires: Commission # DD376165
My Commission Number is Expires January 21, 2009
Bonded Troy Fain Insurance, Inc. 800-385-7019

Exhibits -

A - Legal Description

EXHIBIT "A"

PARCEL 1:

A PARCEL OF LAND LYING AND BEING A PART OF THE F RICHARD GRANT, SECTION 56, TOWNSHIP 3 SOUTH, RANGE 27 EAST, DUVAL COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: FOR A POINT OF COMMENCEMENT BEGIN AT THE SOUTHWEST CORNER OF SECTION 23 AND THE NORTHWEST CORNER OF SECTION 26 AND LYING IN THE EASTERLY LINE OF SAID F RICHARD GRANT, ALL WITHIN SAID TOWNSHIP 3 SOUTH, RANGE 27 EAST, SAID POINT OF COMMENCEMENT ALSO BEING SITUATED IN THE CENTERLINE OF BAYMEADOWS ROAD A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 89°44'01" WEST, ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 382.12 FEET TO A POINT SITUATED ON THE NORTHERLY PRODUCTION OF THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY A 80 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 00°15'59" EAST, ALONG SAID WESTERLY RIGHT OF WAY LINE OF WESTERN WAY, A DISTANCE OF 376.96 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUE SOUTH 00°15'59" EAST, A DISTANCE OF 215.01 FEET TO A POINT OF CURVATURE OF A CURVE CONCAVE WESTERLY AND HAVING A RADIUS OF 465.13 FEET; THENCE SOUTHERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 01°50'57", AN ARC LENGTH OF 15.01 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 00°39'51" WEST, 15.01 FEET; THENCE DEPARTING SAID RIGHT OF WAY LINE; SOUTH 89°44'01" WEST A DISTANCE OF 237.26 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 153.15 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 27.80 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 75.94 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 128.99 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 2.34 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 7.00 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 2.34 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 73.71 FEET TO THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY AND THE POINT OF BEGINNING.

PARCEL 3:

A PARCEL OF LAND LYING AND BEING A PART OF THE F RICHARD GRANT, SECTION 56, TOWNSHIP 3 SOUTH, RANGE 27 EAST, DUVAL COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: FOR A POINT OF COMMENCEMENT BEGIN AT THE SOUTHWEST CORNER OF SECTION 23 AND THE NORTHWEST CORNER OF SECTION 26 AND LYING IN THE EASTERLY LINE OF SAID F RICHARD GRANT, ALL WITHIN SAID TOWNSHIP 3 SOUTH, RANGE 27 EAST, SAID POINT OF COMMENCEMENT ALSO BEING SITUATED IN THE CENTERLINE OF BAYMEADOWS ROAD A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 89°44'01" WEST ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 382.12 FEET TO A POINT SITUATED ON THE NORTHERLY PRODUCTION OF THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY A 80 FOOT RIGHT OF WAY AS

NOW ESTABLISHED; THENCE SOUTH 00°15'59" EAST ALONG SAID WESTERLY RIGHT OF WAY LINE OF WESTERN WAY, A DISTANCE OF 240.00 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 00°15'59" EAST CONTINUING ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 136.96 FEET; THENCE SOUTH 89°31'54" WEST, DEPARTING SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 73.71 FEET; THENCE SOUTH 00°15'59" EAST, A DISTANCE OF 2.40 FEET; THENCE SOUTH 89°31'54" WEST, A DISTANCE OF 7.00 FEET; THENCE NORTH 00°15'59" WEST, A DISTANCE OF 2.34 FEET; THENCE SOUTH 89°31'54" WEST, A DISTANCE OF 128.99 FEET; THENCE SOUTH 00°15'59" EAST, A DISTANCE OF 75.94 FEET; THENCE SOUTH 89°31'54" WEST A DISTANCE OF 27.80 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 30.33 FEET; THENCE SOUTH 89°42'11" WEST A DISTANCE OF 155.01 FEET; THENCE SOUTH 00°16'35" EAST A DISTANCE OF 103.18 FEET; THENCE SOUTH 89°35'47" WEST A DISTANCE OF 201.06 FEET; THENCE NORTH 20°32'58" WEST A DISTANCE OF 434.29 FEET; THENCE NORTH 44°30'44" EAST A DISTANCE OF 62.61 FEET; THENCE NORTH 65°01'52" EAST A DISTANCE OF 17.23 FEET; THENCE NORTH 77°10'41" EAST A DISTANCE OF 86.40 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 40.00 FEET; THENCE SOUTH 77°10'41" WEST A DISTANCE OF 69.00 FEET; THENCE SOUTH 65°01'52" WEST A DISTANCE OF 10.29 FEET; THENCE SOUTH 44°30'44" WEST A DISTANCE OF 18.88 FEET; THENCE SOUTH 00°19'20" EAST A DISTANCE OF 12.28 FEET; THENCE SOUTH 13°28'26" EAST A DISTANCE OF 46.22 FEET; THENCE NORTH 89°44'01" EAST A DISTANCE OF 679.44 FEET; TO THE POINT OF BEGINNING.

Less and except any part lying with I95.

INGRESS/EGRESS EASEMENT

A PORTION OF THE F RICHARD GRANT SECTION 36 TOWNSHIP 3 SOUTH, RANGE 27 EAST, CITY OF JACKSONVILLE, DUVAL COUNTY, FLORIDA, BEING MORE FULLY DESCRIBED AS FOLLOW:

COMMENCE AT THE INTERSECTION OF THE CENTERLINE OF SURVEY FOR INTERSTATE HIGHWAY NO. 95, WITH THE CENTERLINE OF BAYMEADOWS ROAD (FORMERLY SAN CLERC ROAD) (BOTH AS NOW ESTABLISHED BY THE FLORIDA DEPARTMENT OF TRANSPORTATION, AND SHOWN ON STATE ROAD RIGHT OF WAY MAP UNDER JOB NO. 72280-3404; THENCE NORTH 89°44'01" EAST, ALONG THE CENTERLINE OF SAID BAYMEADOWS ROAD, A DISTANCE OF 581.22 FEET; THENCE SOUTH 00°15'59" EAST, DEPARTING SAID CENTERLINE OF BAYMEADOWS ROAD, A DISTANCE OF 90.00 FEET TO THE SOUTHERLY RIGHT OF WAY LINE OF SAID BAYMEADOWS ROAD; THENCE NORTH 89°44'01" EAST, ALONG SAID SOUTHERLY RIGHT OF WAY LINE OF BAYMEADOWS ROAD, A DISTANCE OF 20.00 FEET TO THE POINT OF BEGINNING:

THENCE CONTINUE NORTH 89°44'01" EAST ALONG SAID SOUTHERLY RIGHT OF WAY LINE OF BAYMEADOWS ROAD, A DISTANCE OF 40.00 FEET TO A POINT ON A

OR BK   14699   PAGE   1510

CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 79.10 FEET; THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 64°53'32"; AN ARC LENGTH OF 89.58 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 44°44'01" WEST, 84.87 FEET; THENCE NORTH 00°15'59" WEST, A DISTANCE OF 40.00 FEET TO A POINT OF CURVATURE OF A CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 40.98 FEET; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 40°23'53"; AN ARC LENGTH OF 28.90 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF NORTH 44°44'01" EAST, 28.30 FEET TO THE POINT OF BEGINNING.

JAX\1263826_1

-27-

## Exhibit "H"
### (Amended and Restatement Assignment of Rents)

Doc # 2008289194, OR BK 14699   Page 1511,   Number Pages: 9,   Recorded 11/17/2008 at 10:52 AM, JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY RECORDING $78.00

Prepared By/Record and Return To:
John R. Ibach, Esquire
Rogers Towers, P.A.
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207

## AMENDED AND RESTATED CONDITIONAL ASSIGNMENT OF RENTS, LEASES AND REVENUES

THIS AMENDED AND RESTATED CONDITIONAL ASSIGNMENT OF RENTS, LEASES AND REVENUES (this "Assignment"), is made this 14th day of November, 2008, by DURGAMA, INC., a Florida corporation (hereinafter referred to as "Borrower") and SHREE-SHIVIJI, LLC, a Florida limited liability company ("Shree") to HAVEN TRUST BANK FLORIDA, a Florida banking corporation (hereinafter referred to as "Lender").

## RECITALS:

A.     Lender has made a loan to Borrower in the original principal amount of Twelve Million Two Hundred Thousand and 00/100 Dollars ($12,200,000.00) (hereinafter referred to as the "Loan"). The Loan is evidenced by: (a) that certain Renewal Promissory Note, dated as of even date herewith, in the original principal amount of Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) ("Note 1"); and (b) by that certain Renewal Promissory Note Including Future Advance, dated as of even date herewith, in the original principal amount of Three Million Four Hundred Fifty Thousand and 00/100 Dollars ($3,450,000.00) ("Note 2"); both executed and delivered by Borrower to Lender (Note 1 and Note 2 are hereinafter collectively referred to as the "Note").

B.     The Note is secured by that certain Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement from the Borrower and Shree to the Lender, dated of even date herewith, recorded or to be recorded in the public records of Duval County, Florida, (hereinafter referred to the "Mortgage"), encumbering certain property of the Borrower and Shree located in Duval County, Florida and more particularly described in Exhibit "A" attached hereto and incorporated by reference herein (hereinafter referred to as the "Premises").

C.     The Note, Mortgage, and all other loan documents executed in connection with the Loan are hereinafter referred to as the "Loan Documents."

D.     This Assignment amends and restates in its entirety those certain assignments described as follows:

(a)     Assignment of Leases, Rents and Profits, dated September 15, 2005, from Borrower, recorded in Official Records Book 12787, page 1635, of the public records of Duval County, Florida; and

(b)     Assignment of Leases, Rents and Profits, dated June 21, 2006, from Borrower, recorded in Official Records Book 13678, page 1887, of the public records of Duval County, Florida;

both of which have been assigned by First Guaranty Bank and Trust Company of Jacksonville to Lender by that certain Assignment of Note, Mortgage and Loan Documents recorded prior to this Assignment in the public records of Duval County, Florida.

E.     As a condition of the Loan, Lender has required that the Borrower execute this Assignment.

NOW, THEREFORE, in order to further secure the payment of the indebtedness of Borrower to Lender evidenced by the Note and in consideration of the acceptance of the aforesaid Note and in further consideration of the sum of Five Dollars ($5.00) paid by Lender to Borrower and other valuable consideration, receipt and sufficiency of which are hereby acknowledged, Borrower hereby covenants and agrees as follows:

1.     <u>Assignment of Leases.</u>

a.     Borrower hereby grants, transfers and assigns to Lender its entire interest in and to any and all leases, rental agreements and agreements for the use and/or occupancy of any part of the Premises (said leases, rental agreements and other agreements are herein referred to as the "Leases") now existing or hereafter entered into which affect the Premises or any part thereof, together with all rents, income and profits arising from said Leases and renewals thereof and all rents, income and profits for use and occupation of the Premises and from all such Leases upon said Premises which may be executed in the future during the term of this Assignment, and to any and all monies, rents, issues and profits of every kind and nature whether arising from Leases or otherwise (all such monies, rents, concessions, receivables, issues and profits of every kind and nature whether arising from Leases or otherwise are hereinafter referred to as "Revenues") arising from the operation, use and occupation of the Premises, and any business operated thereon.

b.     This Assignment is made for the purpose of securing: (i) the payment of the principal sum and interest thereon of the Note, including any extension thereof; (ii) payment of all other sums with interest thereon becoming due and payable to Lender under the provisions of this Assignment, the Note, or the Loan Documents; and (iii) the performance and discharge of each and every obligation, covenant and agreement of Borrower contained herein or in the Loan Documents.

c.     Borrower covenants and agrees that, at Lender's request, Borrower shall assign and transfer to the Lender any and all subsequent Leases upon all or any part of the Premises and shall execute and deliver at the request of Lender all such further assurances and assignments in the Premises as Lender shall from time to time require.

d.     Upon the occurrence of an Event of Default hereunder by the Borrower, this assignment shall be absolute and become operative upon written demand from Lender. Such Revenues shall be collected by or at the direction and under the control of the Lender and the net proceeds thereof (net after payment of collection costs) shall be applied to the indebtedness

JAX\1263780_1                              -2-

secured hereby in such manner as the Lender elects, as and when the same shall become due and payable.

2.    Covenants of Borrower.  Borrower hereby covenants and agrees as follows:

a.    Borrower shall observe and perform all the material obligations imposed upon the Borrower, as lessor, under said Leases and shall not do or permit to be done anything to impair the security thereof.

b.    Borrower shall not collect any of the rent, income, and profits arising or accruing under said Leases or from the Premises more than two months in advance.

c.    Borrower shall not execute any other assignment of Borrower's Interest in said Leases or any assignment of the Revenues arising or accruing from said Leases or from the Premises.

3.    Collection of Revenues.

a.    So long as no Event of Default shall have occurred hereunder, Borrower shall have the right to collect at the time of, but not prior to, the date provided for the payment thereof, Revenues arising under said Leases and/or from the operation, use or occupation of the Premises described therein and to retain, use and enjoy the same.

b.    After the occurrence of an Event of Default hereunder, all Revenues arising under said Leases shall be paid to Lender and applied as set forth herein.  Borrower hereby authorizes and directs the lessees named in said Leases or any other or future lessees or occupants of the Premises described therein or in said Mortgage to pay over to the Lender all Revenues hereby assigned upon receipt from the Lender of written notice to the effect that Lender is then the holder of said Note and Mortgage and that an Event of Default exists thereunder or under this Assignment, and to continue to do so until otherwise notified by Lender.

4.    Events of Default\Remedies.

a.    The occurrence of any of the following events shall be an event of default under this Assignment ("Event of Default"):

(1)    Borrower defaults in the performance of any of the covenants, agreements and obligations of Borrower under the terms and conditions of this Assignment, which default is not otherwise the subject matter of any other subparagraphs in this Paragraph 4, and such default is not curable, or if curable, continues for a period of thirty (30) days after notice of such default is delivered by Lender to Borrower.

(2)    Borrower defaults in the performance of any of its obligations under any of the other Loan Documents and such default continues after all applicable notice and cure periods, if any.

JAX\1263780_1                                   -3-

(3)     Any representations, warranty or statement made by Borrower herein or in any certificate, report or other writing delivered pursuant hereto shall be untrue as of the date made.

b.     Upon or at any time after an Event of Default, Lender shall be entitled to exercise any and all remedies available to Lender under the terms of the Loan Documents. In addition to such remedies, Lender may apply to a court of competent jurisdiction, for the appointment of a receiver to take charge of, manage, preserve, protect, complete construction of and operate the Premises and any business or businesses located thereon; to collect the assigned Revenues therefrom; to make all necessary and needed repairs to the Premises; to pay all taxes and assessments against the Premises and insurance premiums for insurance thereon; and after the payment of the expense of the receivership, including reasonable attorney's fees to the Mortgagee's attorney, and after compensation to the receiver for management and completion of the Premises, to apply the net proceeds derived therefrom in reduction of the indebtedness secured hereby or in such manner as such court shall direct. Borrower hereby consents and agrees to the appointment of such receiver after an Event of Default, regardless of the value of the security for the indebtedness secured hereby or of the solvency of any party bound for the payment of such indebtedness. All expenses, fees and compensation incurred in connection with such receivership, shall be secured by this Assignment until paid. The receiver and the receiver's agents shall be entitled to enter upon and take possession of any and all of the Premises, together with any and all businesses conducted thereon and all business assets used in conjunction therewith or thereon, or any part or parts thereof, and operate and conduct such business or businesses to the fullest extent allowed by law and by the provisions of the order appointing receiver.

5.     No Liability to Lender\Indemnity of Borrower. Lender shall not be liable for any loss sustained by the Borrower resulting from Lender's failure to let the Premises after default or from any other act or omission of Lender in managing the Premises after default. Nor shall Lender be obligated to perform or discharge nor does Lender hereby undertake to perform or discharge any obligation, duty, or liability under said Leases by reason of this Assignment, and Borrower shall and does hereby agree to indemnify and hold Lender harmless from, any and all liability, loss, or damage which may be incurred under said Leases or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in said Leases. Should Lender incur any such liability under said Leases or by reason of this Assignment or in defense of any such claims or demands, the amount thereof, including costs, expenses, and reasonable attorneys' fees, shall be secured hereby and Borrower shall reimburse Lender therefore within ten (10) days after demand and upon the failure of Borrower so to do, Lender may, at its option, declare all sums secured hereby and by said Mortgage immediately due and payable. And it is further understood that this Assignment shall not operate to place responsibility for the control, care, management, or repair of said Premises upon Lender, nor for the carrying out of any of the terms and conditions of said Leases; nor shall it operate to make Lender responsible or liable for any waste committed on the property by the tenants or any other parties or for any dangerous or defective condition of the Premises, or for any negligence in the management, upkeep, repair, or control of said Premises resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

6. Termination of Assignment. Lender agrees that upon the payment in full of all indebtedness secured by this Assignment and the full performance by the Borrower of all its obligations under the Loan Documents, this Assignment shall be void and of no further force and effect.

7. Release of Security. Lender may take or release other security for the payment of the indebtedness secured hereby, may release any party primarily or secondarily liable therefor, and may apply any other security held by it to the satisfaction of such indebtedness without prejudice to any of its rights under this Assignment.

8. Leases. The term "Leases" or "said Leases," as used herein, means the Leases hereby assigned or any extension or renewal thereof, and any Leases subsequently executed during the term of this Assignment covering the Premises or any part thereof.

9. No Waiver. Nothing contained in this Assignment, and no act done or omitted by Lender pursuant to the powers and rights granted it hereunder, shall be deemed to be a waiver by Lender of its rights and remedies hereunder and/or under said Note and Mortgage. This Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms of said Note and Mortgage. The right of the said Lender to collect the principal sum of the Note or interest thereon, and to enforce any other security therefor held by it, may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

10. Conflict with Mortgage. In case of any conflict between the terms of this Assignment and the terms of the Mortgage described above, the terms of Mortgage shall prevail.

11. Successors and Assigns. This Assignment, together with the covenants and warranties therein contained, shall inure to the benefit of Lender and any subsequent holder of the said Note and Mortgage shall be binding upon Borrower, their successors, executors, personal representatives, and assigns, and any subsequent owner of the Premises.

12. WAIVER OF JURY TRIAL. BORROWER AND LENDER, JOINTLY AND SEVERALLY, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS, WHETHER VERBAL OR WRITTEN, OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER MAKING THE LOAN EVIDENCED HEREBY.

*[Signatures contained on next page.]*

IN WITNESS WHEREOF, the Borrower and Shree have executed this Assignment the day and year first above written.

Signed, sealed and delivered
in the presence of:

"BORROWER"

DURGAMA, INC., a Florida corporation

By: _____

Name: _____

Name: Narendra Patel

Name: _____VICKI L. CROSS_____

Title:   President

Address:   1300 N. Ponce de Leon Boulevard
St. Augustine, Florida 32084

"SHREE"

SHREE-SHIVJI, LLC, a Florida limited
liability company

By: _____

Name: _____

Name: Narendra Patel

Name: _____VICKI L. CROSS_____

Title:   President

Address:   1300 N. Ponce de Leon Boulevard
St. Augustine, Florida 32084

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 13th day of November, 2008 by Narendra Patel, the President of DURGAMA, INC., a Florida corporation, and as President of SHREE-SHIVJI, LLC, a Florida limited liability company, on behalf of the corporations. He (check one) ☐ is personally known to me or ☑ has produced a valid driver's license as identification.

_____
Notary Public, State and County Aforesaid
Name: _____
My Commission Expires: _____
My Commission Number: _____

Vicki L. Cross
Commission # DD378165
Expires January 21, 2009
Bonded Thru/Fehr Insurance, Inc. 800-395-7019

EXHIBIT "A"

PARCEL 1:

A PARCEL OF LAND LYING AND BEING A PART OF THE F RICHARD GRANT, SECTION 56, TOWNSHIP 3 SOUTH, RANGE 27 EAST, DUVAL COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:. FOR A POINT OF COMMENCEMENT BEGIN AT THE SOUTHWEST CORNER OF SECTION 23 AND THE NORTHWEST CORNER OF SECTION 26 AND LYING IN THE EASTERLY LINE OF SAID F RICHARD GRANT, ALL WITHIN SAID TOWNSHIP 3 SOUTH, RANGE 27 EAST, SAID POINT OF COMMENCEMENT ALSO BEING SITUATED IN .THE CENTERLINE OF BAYMEADOWS ROAD A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 89°44'01" WEST, ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 382.12 FEET TO A POINT SITUATED ON THE NORTHERLY PRODUCTION OF THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY A 80 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 00°15'59" EAST, ALONG SAID WESTERLY RIGHT OF WAY LINE OF WESTERN WAY, A DISTANCE OF 376.96 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUE SOUTH 00°15'59" EAST, A DISTANCE OF 215.01 FEET TO A POINT OF CURVATURE OF A CURVE CONCAVE WESTERLY AND HAVING A RADIUS OF 465.13 FEET; THENCE SOUTHERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 01°50'57", AN ARC LENGTH OF 15.01 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 00°39'51" WEST, 15.01 FEET; THENCE DEPARTING SAID RIGHT OF WAY LINE; SOUTH 89°44'01" WEST A DISTANCE OF 237.26 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 153.15 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 27.80 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 75.94 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 128.99 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 2.34 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 7.00 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 2.34 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 73.71 FEET TO THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY AND THE POINT OF BEGINNING.

PARCEL 3:

.A PARCEL OF LAND LYING AND BEING A PART OF THE F RICHARD GRANT, SECTION 56, TOWNSHIP 3 SOUTH, RANGE 27 EAST, DUVAL COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: FOR A POINT OF COMMENCEMENT BEGIN AT THE SOUTHWEST CORNER OF SECTION 23 AND THE NORTHWEST CORNER OF SECTION 26 AND LYING IN THE EASTERLY LINE OF SAID F RICHARD GRANT, ALL WITHIN SAID TOWNSHIP 3 SOUTH, RANGE 27 EAST, SAID POINT OF COMMENCEMENT ALSO BEING SITUATED IN THE CENTERLINE OF BAYMEADOWS ROAD A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 89°44'01" WEST ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 382.12 FEET TO A POINT SITUATED ON THE NORTHERLY PRODUCTION OF THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY A 80 FOOT RIGHT OF WAY AS

NOW ESTABLISHED; THENCE SOUTH 00°15'59" EAST ALONG SAID WESTERLY RIGHT OF WAY LINE OF WESTERN WAY, A DISTANCE OF 240.00 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 00°15'59" EAST CONTINUING ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 136.96 FEET; THENCE SOUTH 89°31'54" WEST, DEPARTING SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 73.71 FEET; THENCE SOUTH 00°15'59" EAST, A DISTANCE OF 2.40 FEET; THENCE SOUTH 89°31'54" WEST, A DISTANCE OF 7.00 FEET; THENCE NORTH 00°15'59" WEST, A DISTANCE OF 2.34 FEET; THENCE SOUTH 89°31'54" WEST, A DISTANCE OF 128.99 FEET; THENCE SOUTH 00°15'59" EAST, A DISTANCE OF 75.94 FEET; THENCE SOUTH 89°31'54" WEST A DISTANCE OF 27.80 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 30.33 FEET; THENCE SOUTH 89°42'11" WEST A DISTANCE OF 155.01 FEET; THENCE SOUTH 00°16'35" EAST A DISTANCE OF 103.18 FEET; THENCE SOUTH 89°35'47" WEST A DISTANCE OF 201.06 FEET; THENCE NORTH 20°32'58" WEST A DISTANCE OF 434.29 FEET; THENCE NORTH 44°30'44" EAST A DISTANCE OF 62.61 FEET; THENCE NORTH 65°01'52" EAST A DISTANCE OF 17.23 FEET; THENCE NORTH 77°10'41" EAST A DISTANCE OF 86.40 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 40.00 FEET; THENCE SOUTH 77°10'41" WEST A DISTANCE OF 69.00 FEET; THENCE SOUTH 65°01'52" WEST A DISTANCE OF 10.29 FEET; THENCE SOUTH 44°30'44" WEST A DISTANCE OF 18.88 FEET; THENCE SOUTH 00°19'20" EAST A DISTANCE OF 12.28 FEET; THENCE SOUTH 13°28'26" EAST A DISTANCE OF 46.22 FEET; THENCE NORTH 89°44'01" EAST A DISTANCE OF 679.44 FEET; TO THE POINT OF BEGINNING.

Less and except any part lying with I95.

INGRESS/EGRESS EASEMENT

A PORTION OF THE F RICHARD GRANT SECTION 36 TOWNSHIP 3 SOUTH, RANGE 27 EAST, CITY OF JACKSONVILLE, DUVAL COUNTY, FLORIDA, BEING MORE FULLY DESCRIBED AS FOLLOW:

COMMENCE AT THE INTERSECTION OF THE CENTERLINE OF SURVEY FOR INTERSTATE HIGHWAY NO. 95, WITH THE CENTERLINE OF BAYMEADOWS ROAD (FORMERLY SAN CLERC ROAD) (BOTH AS NOW ESTABLISHED BY THE FLORIDA DEPARTMENT OF TRANSPORTATION, AND SHOWN ON STATE ROAD RIGHT OF WAY MAP UNDER JOB NO. 72280-3404; THENCE NORTH 89°44'01" EAST, ALONG THE CENTERLINE OF SAID BAYMEADOWS ROAD, A DISTANCE OF 581.22 FEET; THENCE SOUTH 00°15'59" EAST, DEPARTING SAID CENTERLINE OF BAYMEADOWS ROAD, A DISTANCE OF 90.00 FEET TO THE SOUTHERLY RIGHT OF WAY LINE OF SAID BAYMEADOWS ROAD; THENCE NORTH 89°44'01" EAST, ALONG SAID SOUTHERLY RIGHT OF WAY LINE OF BAYMEADOWS ROAD, A DISTANCE OF 20.00 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUE NORTH 89°44'01" EAST ALONG SAID SOUTHERLY RIGHT OF WAY LINE OF BAYMEADOWS ROAD, A DISTANCE OF 40.00 FEET TO A POINT ON A

JAX\1263780_1        -8-

CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 79.10 FEET; THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 64°53'32"; AN ARC LENGTH OF 89.58 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 44°44'01" WEST, 84.87 FEET; THENCE NORTH 00°15'59" WEST, A DISTANCE OF 40.00 FEET TO A POINT OF CURVATURE OF A CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 40.98 FEET; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 40°23'53"; AN ARC LENGTH OF 28.90 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF NORTH 44°44'01" EAST, 28.30 FEET TO THE POINT OF BEGINNING.

JAX\1263780_1

**Exhibit "I"**
(Haven Trust Financing Statement)

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
John R. Ibach, Esquire (904) 398-3911

**B. SEND ACKNOWLEDGEMENT TO:**

| | |
|---|---|
| Name | Vicki L. Cross, CLA |
| Address | Rogers Towers, P.A. |
| Address | 1301 Riverplace Boulevard, Suite 1500 |
| City/State/Zip | Jacksonville, Florida 32207 |

FLORIDA SECURED TRANSACTION REGISTRY

# FILED

## 2008 Nov 19 AM 12:00

**** 200809555822 ****

***C * 11190801154701-40.00***40.00***

THE

---

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b)**

| 1a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| Durgama, Inc. | | | | | | |

| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY | |
|---|---|---|---|---|---|---|
| 1300 N. Ponce de Leon Boulevard | | St. Augustine | FL | 32084 | USA | |

| 1d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID# | |
|---|---|---|---|---|---|
| 59-3451084 | | corporation | Florida | P97000030910 ☐ NONE | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Shree-Shivji, LLC | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1300 N. Ponce de Leon Boulevard | St. Augustine | FL | 32084 | USA |

| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID# |
|---|---|---|---|---|
| 20-4190947 | | limited liability company | Florida | L05000089420 ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Haven Trust Bank Florida | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 212 Ponte Vedra Park Drive | Ponte Vedra Beach | FL | 32082 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All Collateral described in Schedule "I" attached hereto now or hereafter acquired. Some of the collateral is located or shall be located upon the real property described in Exhibit "A" attached hereto.

---

**5. ALTERNATE DESIGNATION (if applicable)** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ AG. LIEN ☐ NON-UCC FILING ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**OPTIONAL FILER REFERENCE DATA** H1197-50256

STANDARD FORM - FORM UCC-1 (REV.12/2001)        Filing Office Copy        Approved by the Secretary of State, State of Florida

EXHIBIT "A"

PARCEL 3

A PARCEL OF LAND LYING AND BEING A PART OF THE F RICHARD GRANT, SECTION 56, TOWNSHIP 3 SOUTH, RANGE 27 EAST, DUVAL COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

FOR A POINT OF COMMENCEMENT BEGIN AT THE SOUTHWEST CORNER OF SECTION 23 AND THE NORTHWEST CORNER OF SECTION 26 AND LYING IN THE EASTERLY LINE OF SAID F RICHARD GRANT, ALL WITHIN SAID TOWNSHIP 3 SOUTH, RANGE 27 EAST, SAID POINT OF COMMENCEMENT ALSO BEING SITUATED IN THE CENTERLINE OF BAYMEADOWS ROAD A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 89°44'01" WEST ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 382.12 FEET TO A POINT SITUATED ON THE NORTHERLY PRODUCTION OF THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY A 80 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 00°15'59" EAST ALONG SAID WESTERLY RIGHT OF WAY LINE OF WESTERN WAY, A DISTANCE OF 240.00 FEET TO THE POINT OF BEGINNING;

THENCE SOUTH 00°15'59" EAST CONTINUING ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 136.96 FEET; THENCE SOUTH 89°31'54" WEST, DEPARTING SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 73.71 FEET; THENCE SOUTH 01°15'59" EAST, A DISTANCE OF 2.40 FEET; THENCE SOUTH 90°00'00" WEST, A DISTANCE OF 7.00 FEET; THENCE NORTH 01°15'59" WEST, A DISTANCE OF 2.34 FEET; THENCE SOUTH 89°31'54" WEST, A DISTANCE OF 128.99 FEET; THENCE SOUTH 00°15'59" EAST, A DISTANCE OF 75.94 FEET; THENCE SOUTH 89°31'54" WEST A DISTANCE OF 27.80 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 30.33 FEET; THENCE SOUTH 89°42'11" WEST A DISTANCE OF 155.01 FEET; THENCE SOUTH 00°16'35" EAST A DISTANCE OF 103.18 FEET; THENCE SOUTH 89°35'47" WEST A DISTANCE OF 201.06 FEET; THENCE NORTH 20°32'58" WEST A DISTANCE OF 434.29 FEET; THENCE NORTH 44°30'44" EAST A DISTANCE OF 62.61 FEET; THENCE NORTH 65°01'52" EAST A DISTANCE OF 17.23 FEET; THENCE NORTH 77°10'41" EAST A DISTANCE OF 86.40 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 40.00 FEET; THENCE SOUTH 77°10'41" WEST A DISTANCE OF 69.00 FEET; THENCE SOUTH 65°01'52" WEST A DISTANCE OF 10.29 FEET; THENCE SOUTH 44°30'44" WEST A DISTANCE OF 18.88 FEET; THENCE SOUTH 00°19'20" EAST A DISTANCE OF 12.28 FEET; THENCE SOUTH 13°28'26" EAST A DISTANCE OF 46.22 FEET; THENCE NORTH 89°44'01" EAST A DISTANCE OF 679.44 FEET; TO THE POINT OF BEGINNING.

Less and except any part lying with I95.

PARCEL 1:

A PARCEL OF LAND LYING AND BEING A PART OF THE F RICHARD GRANT, SECTION 56, TOWNSHIP 3 SOUTH, RANGE 27 EAST, DUVAL COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: FOR A POINT OF COMMENCEMENT BEGIN AT THE SOUTHWEST CORNER OF SECTION 23 AND THE NORTHWEST CORNER OF SECTION 26 AND LYING IN THE EASTERLY LINE OF SAID

1263829_1.DOC

F RICHARD GRANT, ALL WITHIN SAID TOWNSHIP 3 SOUTH, RANGE 27 EAST, SAID POINT OF COMMENCEMENT ALSO BEING SITUATED IN THE CENTERLINE OF BAYMEADOWS ROAD A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 89°44'01" WEST, ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 382.12 FEET TO A POINT SITUATED ON THE NORTHERLY PRODUCTION OF THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY A 80 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 00°15'59" EAST, ALONG SAID WESTERLY RIGHT OF WAY LINE OF WESTERN WAY, A DISTANCE OF 376.96 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUE SOUTH 00°15'59" WEST, A DISTANCE OF 215.01 FEET TO A POINT OF CURVATURE OF A CURVE CONCAVE WESTERLY AND HAVING A RADIUS OF 465.13 FEET; THENCE SOUTHERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 01°50'57", AN ARC LENGTH OF 15.01 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 00°39'51" WEST, 15.01 FEET; THENCE DEPARTING SAID RIGHT OF WAY LINE; SOUTH 89°44'01" WEST A DISTANCE OF 237.26 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 154.10 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 27.80 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 75.94 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 128.99 FEET; THENCE SOUTH 00°15'59" EAST A DISTANCE OF 2.34 FEET; THENCE EAST A DISTANCE OF 7.00 FEET; THENCE NORTH 00°15'59" WEST A DISTANCE OF 2.40 FEET; THENCE NORTH 89°31'54" EAST A DISTANCE OF 73.71 FEET TO THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY AND THE POINT OF BEGINNING.

PARCEL 2:

A PARCEL OF LAND LYING AND BEING A PART OF THE F RICHARD GRANT, SECTION 56, TOWNSHIP 3 SOUTH, RANGE 27 EAST, DUVAL COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

FOR A POINT OF COMMENCEMENT BEGIN AT THE SOUTHWEST CORNER OF SECTION 23 AND THE NORTHWEST CORNER OF SECTION 26 AND LYING IN THE EASTERLY LINE OF SAID F RICHARD GRANT, ALL WITHIN SAID TOWNSHIP 3 SOUTH, RANGE 27 EAST, SAID POINT OF COMMENCEMENT ALSO BEING SITUATED IN THE CENTERLINE OF BAYMEADOWS ROAD A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 89°44'01" WEST, ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 382.12 FEET TO A POINT SITUATED ON THE NORTHERLY PRODUCTION OF THE WESTERLY RIGHT OF WAY LINE OF WESTERN WAY A 80 FOOT RIGHT OF WAY AS NOW ESTABLISHED; THENCE SOUTH 00°15'59" EAST, ALONG SAID WESTERLY RIGHT OF WAY LINE OF WESTERN WAY, A DISTANCE OF 591.88 FEET TO A POINT OF CURVATURE OF A CURVE CONCAVE WESTERLY AND HAVING A RADIUS OF 465.13 FEET; THENCE SOUTHERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 01°50'57", AN ARC LENGTH OF 15.01 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 00°39'51" WEST, 15.01 FEET; THENCE SOUTH 89°44'01" WEST DEPARTING SAID RIGHT OF WAY LINE, A DISTANCE OF 237.26 FEET TO THE POINT OF BEGINNING;

THENCE NORTH 00°15'59" WEST, A DISTANCE OF 122.82 FEET; THENCE SOUTH 89°42'11" WEST, A DISTANCE OF 155.01 FEET; THENCE SOUTH 00°16'35" EAST, A DISTANCE OF 103.18 FEET; THENCE SOUTH 89°35'47" WEST, A DISTANCE OF 201.06 FEET; THENCE SOUTH 20°32'58" EAST, A DISTANCE OF 156.50 FEET; THENCE SOUTH 87°47'19" EAST, A DISTANCE OF 267.71 FEET; THENCE NORTH 02°12'41" EAST, A DISTANCE OF 139.42 FEET; THENCE NORTH 89°44'01" EAST, A DISTANCE OF 28.31 FEET TO THE POINT OF BEGINNING.

Less and except any part lying within I95.

INGRESS/EGRESS EASEMENT

A PORTION OF THE F RICHARD GRANT SECTION 36 TOWNSHIP 3 SOUTH, RANGE 27 EAST, CITY OF JACKSONVILLE, DUVAL COUNTY, FLORIDA, BEING MORE FULLY DESCRIBED AS FOLLOW:

COMMENCE AT THE INTERSECTION OF THE CENTERLINE OF SURVEY FOR INTERSTATE HIGHWAY NO. 95, WITH THE CENTERLINE OF BAYMEADOWS ROAD (FORMERLY SAN CLERC ROAD) (BOTH AS NOW ESTABLISHED BY THE FLORIDA DEPARTMENT OF TRANSPORTATION, AND SHOWN ON STATE ROAD RIGHT OF WAY MAP UNDER JOB NO. 72280-3404; THENCE NORTH 89°44'01" EAST, ALONG THE CENTERLINE OF SAID BAYMEADOWS ROAD, A DISTANCE OF 581.22 FEET; THENCE SOUTH 00°15'59" EAST, DEPARTING SAID CENTERLINE OF BAYMEADOWS ROAD, A DISTANCE OF 90.00 FEET TO THE SOUTHERLY RIGHT OF WAY LINE OF SAID BAYMEADOWS ROAD; THENCE NORTH 89°44'01" EAST, ALONG SAID SOUTHERLY RIGHT OF WAY LINE OF BAYMEADOWS ROAD, A DISTANCE OF 20.00 FEET TO THE POINT OF BEGINNING:

THENCE CONTINUE NORTH 89°44'01" EAST ALONG SAID SOUTHERLY RIGHT OF WAY LINE OF BAYMEADOWS ROAD, A DISTANCE OF 40.00 FEET TO A POINT ON A CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 79.10 FEET; THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 64°53'32"; AN ARC LENGTH OF 89.58 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF SOUTH 44°44'01" WEST, 84.87 FEET; THENCE NORTH 00°15'59" WEST, A DISTANCE OF 40.00 FEET TO A POINT OF CURVATURE OF A CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 40.98 FEET; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 40°23'53"; AN ARC LENGTH OF 28.90 FEET, SAID CURVE BEING SUBTENDED BY A CHORD BEARING AND DISTANCE OF NORTH 44°44'01" EAST, 28.30 FEET TO THE POINT OF BEGINNING.

## SCHEDULE "I"
### Page 1 of 1

ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN THE FOLLOWING:

All machinery, apparatus, equipment, fittings, and fixtures, whether actually or constructively attached to the real property described in Exhibit "A" (the "Property"), and all building materials of every kind and nature, and all trade, domestic, and ornamental fixtures and all personal property now or hereafter located in, upon, over, or under the Property or any part thereof on or off-site benefitting the Property and used or usable or intended to be used in connection with any present or future operation of said Property, including, but without limiting the generality of the foregoing: all heating, air-conditioning, lighting, incinerating, and power equipment; all engines, compressors, pipes, pumps, tanks, motors, conduits and switchboards; all plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; all boilers, furnaces, oil burners, vacuum cleaning systems, elevators, and escalators; all built-in stoves, ovens, ranges, disposal units, dishwashers, water heaters, exhaust systems, refrigerators, cabinets, and partitions; all rugs and carpets; laundry equipment; together with all contract rights to acquire any of the foregoing and all deposits and payments made under contracts for the acquisition of same; together with all additions and accessions thereto and replacements thereof and proceeds therefrom.

All awards in condemnation proceedings and in lieu thereof and all insurance loss proceeds and claims therefor. All insurance policies of Debtor related to the Collateral and Property.

All contracts, management agreements, maintenance agreements and/or service agreements, now existing or hereafter executed, with vendors in connection with or pertaining to the Property.

Any and all building permits, governmental permits, licenses or other governmental authorizations or approvals in favor of or in the name of Debtor now existing or hereafter executed, relating to the Property.

Any and all utility service agreements wherein a utility company, utility provider and/or a municipality or county has agreed to provide utilities to the Property.

All leases, contracts, binders or other agreements between Debtor and a tenant or buyer of the Property for the lease or purchase and sale of the Property, including such leases, contract binders or other agreements which may hereafter come into existence with respect to the Property.

All general intangibles and accounts of Borrower arising from, created by, or in connection with, any of the foregoing.

The proceeds of all of the foregoing.

## GUARANTY

THIS GUARANTY is executed and delivered as of the _14th_ day of November, 2008, by NARENDRA PATEL and JYOTSNA PATEL, his wife (hereinafter collectively referred to as "Guarantor") to HAVEN TRUST BANK FLORIDA, a Florida banking corporation (hereinafter referred to as "Lender").

## RECITALS

Lender has made a loan to DURGAMA, INC., a Florida corporation (hereinafter referred to as "Borrower") in the original principal amount of Twelve Million Two Hundred Thousand and 00/100 Dollars ($12,200,000.00) (hereinafter referred to as the "Loan"). The Loan is evidenced by: (a) that certain Renewal Promissory Note, dated as of even date herewith, in the original principal amount of Eight Million Seven Hundred Fifty Thousand and 00/100 Dollars ($8,750,000.00) ("Note 1"); and (b) that certain Renewal Promissory Note Including Future Advance, dated as of even date herewith, in the original principal amount of Three Million Four Hundred Fifty Thousand and 00/100 Dollars ($3,450,000.00) ("Note 2"), both executed and delivered by Borrower to Lender (Note 1 and Note 2 are hereinafter collectively referred to as the "Note").

A.    The Note is secured by that certain Amended and Restated Mortgage, Security Agreement, Financing Statement and Spreading Agreement from the Borrower and SHREE-SHIVJI, LLC, a Florida limited liability company ("Shree") to the Lender, dated of even date herewith, encumbering certain property of the Borrower and Shree located in Duval County, Florida (hereinafter referred to as the "Mortgage").

B.    The Note, Mortgage and all other loan documents executed in connection with the Loan are hereinafter referred to as the "Loan Documents."

C.    As a condition of the Loan, Lender has required that Guarantor guarantee the performance of the Borrower's obligations under the Loan Documents as more particularly set forth herein.

NOW, THEREFORE, in consideration for the Lender making the Loan to Borrower, the Guarantor does hereby promise, agree, covenant and acknowledge as follows:

1.    RECITALS. The above recitals are true and correct.

2.    GUARANTY. Guarantor does hereby unconditionally guarantee to Lender and its successors, successor in title and assigns: (a) the punctual payment when due, in due course or upon acceleration, with such interest as may accrue thereon either before or after maturity thereof, of all sums which come due upon the Note, including, without limitation, all fees and collection costs payable thereunder, together with any renewals, modifications and extensions thereof; and (b) the punctual payment and performance of any and all obligations of Borrower to Lender coming due under or secured by the terms of the Loan Documents including, without limitation, all fees, costs and expenses payable thereunder. Guarantor does hereby agree that if the debts contained in the Note and Loan Documents are not paid by Borrower in accordance with the terms thereof, or if any and all sums which may hereafter become due from Borrower to

Lender under the Note or Loan Documents are not paid by Borrower in accordance with the terms thereof, then Guarantor will upon demand immediately make such payments. Guarantor hereby acknowledges its approval of the contents, execution and delivery of the Note and Loan Documents.

3.   NATURE OF GUARANTY.

(a)   This is a guaranty of payment and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person or upon pursuit of any security or lien available to Lender. If the Borrower does not pay any sum due under the Note or any of the Loan Documents, after any applicable cure period, the Lender, in its sole discretion, may proceed directly against Guarantor under this Guaranty without first proceeding against the Borrower or any of the collateral securing the Loan or exhausting any of its remedies against the Borrower. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender to pursue remedies available to Lender or if such indebtedness is otherwise partially paid, Guarantor shall nevertheless remain liable for the balance of the indebtedness guaranteed hereby.

(b)   Guarantor agrees that, if at any time all or any part of any payment previously applied by Lender to the Loan is or must be returned by or recovered from Lender for any reason (including, without limitation, the bankruptcy of Borrower), this Guaranty shall continue to be effective or be reinstated, and the Loan will be deemed to have continued in existence as if the prior application had not been made; in addition to the foregoing, Guarantor hereby agrees to indemnify, save and hold the Lender harmless from and against any required return by or recovery from Lender of any such payments for whatever reason, including without limitation as a result of any such payments being deemed to be preferential payments by the Borrower, Guarantor or any other entity under applicable bankruptcy laws.

4.   FINANCIAL STATEMENTS; TRANSFER OF ASSETS.   Guarantor acknowledges that the Lender has agreed to make the Loan to the Borrower in reliance upon the execution and delivery of this Guaranty and the financial statements (the "Financial Statements") of Guarantor submitted to the Lender. In recognition of the foregoing, Guarantor agrees that for so long as this Guaranty remains in effect, or for so long as there exists outstanding indebtedness under the Note, Guarantor will forbear and refrain, without adequate consideration, from conveying, selling, deeding, mortgaging, pledging, hypothecating or otherwise transferring (collectively a "transfer" or "transferring") any (i) individual asset with a value in excess of $10,000.00 shown on a Financial Statement or (ii) any combination of assets with a value, in the aggregate, in excess of $25,000.00 shown on a Financial Statement to any party, including a spouse or child, without the prior written consent of Lender.

5.   CONSIDERATION.   Guarantor represents, warrants and acknowledges that Guarantor has received good, valuable and sufficient consideration for the making of this Guaranty and expressly agrees that recourse may be had against Guarantor's property for all obligations hereunder, and further agrees that any and all of Guarantor's properties shall be subject to execution for any judgment rendered against the Guarantor on this Guaranty by a court of competent jurisdiction.

6.    GUARANTY OF COSTS.    Guarantor absolutely and unconditionally guarantees the prompt and full payment of all costs and expenses of whatever nature or kind, including without limitation, reasonable attorney's fees, incurred by Lender in enforcing the provisions of this Guaranty and in collecting the obligations guarantied hereunder, whether or not legal action is brought against the Borrower, the Guarantor or either of them, including but not limited to those incurred in connection with court proceedings at trial and appellate levels, including without limitation, bankruptcy and probate proceedings.

7.    MULTIPLE GUARANTORS.    If this Guaranty instrument reflects, or if in fact there is ever at any time more than one guarantor of the indebtedness described above, the failure or refusal of any or some of such Guarantors to execute this Guaranty or from time to time any amendments, modifications, consents, or other instruments related to the Guaranty, the indebtedness, the Note or Loan Documents, shall not affect or impair the agreements and obligations of Guarantors bound hereby.

8.    CONSENT OF GUARANTOR.    Guarantor hereby consents and agrees that Lender may at any time, without notice to or further consent from Guarantor, either with or without consideration, surrender or release or allow or permit the surrender or release (whether voluntarily, by third party action, or by operation of law) of any property or other security of any kind or nature whatsoever held by Lender or by any person, firm or corporation on Lender's behalf or for Lender's account securing any indebtedness or liability hereby guaranteed; substitute for any collateral so held by Lender, other collateral of like kind, or of any kind; modify the terms of the Note, the Loan Documents, or any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness guaranteed or evidenced by the Note or secured by the Loan Documents; extend or renew the indebtedness or the Note for any period; grant releases, compromises and indulgences upon or with respect to this Guaranty, the indebtedness, the Note, or the Loan Documents.    Any such action by Lender shall not in any manner affect the liability of Guarantor hereunder.    Guarantor hereby further consents and agrees that Lender may at any time, without notice to or further consent from Guarantor, either with or without consideration, release one or more of Guarantors under this Guaranty, if more than one, or any other guarantor or endorser of the indebtedness, the Note or the Loan Documents, and such release shall not in any way affect the liability of any Guarantor not released from liability by Lender.

9.    SUBORDINATION.    Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to Guarantor, or any of them if more than one including, without limitation, any indebtedness arising out of any claim of indemnity, reimbursement or contribution Guarantor may have against Borrower.    Guarantor subordinates any and all security held by Guarantor, or any of them if more than one, to all indebtedness of Borrower to Lender and to all security held by Lender.    Guarantor agrees with Lender that, until such time as the guaranteed indebtedness is paid in full, Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain a superior interest to Lender in any of the security for Lender's loan to Borrower.

1263824_1.DOC                                                    - 3 -

10.   WAIVERS BY GUARANTOR.

(a)   Guarantor hereby waives:  (i) notice of acceptance of this Guaranty; (ii) notice of creation of any obligation guaranteed hereby; (iii) diligence in collection and in realization of recovery from the security for the guaranteed obligations; and (iv) presentment, demand, protest, notice of dishonor and all other notices.

(b)   Guarantor hereby waives and agrees not to assert or take advantage of:  (i) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the attempted revocation hereof by Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy or any other proceeding) of Guarantor or any other person or entity; (ii) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligations hereby guaranteed; or (iii) any defense based upon the grounds that an election of remedies by Lender (including, without limitation, an election to proceed by non-judicial rather than judicial foreclosure), has destroyed or otherwise impaired the subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement.

(c)   Guarantor waives to the fullest extent allowed by law any and all exemptions afforded under §222.11 Florida Statutes.

11.   REPRESENTATIONS AND WARRANTIES.  Guarantor represents and warrants to Lender that:

(a)   All prior representations made by Guarantor to Lender are true and correct in all material respects; all financial statements furnished to Lender are complete, true and correct in all material respects and fairly represents the financial condition of the subjects thereof as of the respective dates thereof; and no material adverse changes have occurred in the financial conditions reflected therein since the respective dates thereof;

(b)   The Guarantor is neither insolvent nor will be rendered insolvent by the execution of this Guaranty;

(c)   The Loan will confer direct, full, fair and equivalent benefit on such Guarantor; and

(d)   There is no litigation, claim or proceeding pending or threatened against such Guarantor which, if determined adversely, would have a material adverse effect on the financial condition of such Guarantor.

12.   NO DUTIES OF LENDER.  Lender shall have no duty to the Guarantor to monitor the actions or condition of the Borrower.  It is the intention of the parties that Lender may rely completely on this Guaranty for repayment of the obligations guarantied hereunder whether or not the Borrower is credit worthy and whether or not it would be prudent to make such loans and advances to or on behalf of the Borrower or to permit the same to remain

outstanding. Lender shall have no duty to the Guarantor to see to the payment and performance by the Borrower of its obligations under the Loan Documents.

13.     GOVERNING LAW. This Guaranty shall be interpreted and construed according to the laws of the State of Florida.

14.     JURISDICTION. Guarantor hereby acknowledges that all amounts payable under this Guaranty are payable in the State of Florida and therefor Guarantor is subject to the personal jurisdiction of the courts of competent jurisdiction of said state for the enforcement of this Guaranty. Guarantor waives any and all personal rights under the laws of said state to object to jurisdiction within said state in the event of litigation arising under or by reason of this Guaranty. Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security and against Guarantor personally, and against any property of Guarantor, within any other state. Initiating such proceeding or taking such action in any other state by Lender shall in no event constitute an implied waiver of the agreement contained herein that the laws of the State of Florida shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Florida.

15.     NO ILLEGAL INTEREST. Nothing herein shall be deemed to obligate any Guarantor to pay any sum of interest which exceeds the maximum rate of interest which such Guarantor may lawfully be required to pay under the laws of the state which govern this instrument or under the applicable laws or regulations of the United States of America. Notwithstanding any other provision herein contained in this Guaranty or in any instrument evidencing this indebtedness, the limitation imposed by this paragraph shall control and limit the obligations of Guarantor to pay sums of interest guaranteed by this instrument. In the event any Guarantor shall pay any sum of interest pursuant to this Guaranty which exceed such maximum rate, such overcharge shall be applied in reduction of any other sum for which such Guarantor is obligated hereunder, if such sum is then due and payable, or shall be refunded to such Guarantor at the election of the Lender.

16.     "GUARANTOR." It is hereby agreed that the word "Guarantor," if it appears hereby that there is more than one, shall, wherever herein used, be construed in the plural, and the covenants, agreements and undertakings herein set forth shall be jointly and severally binding upon such Guarantors, and their respective successors, successors in title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors in title, heirs, legal representatives and assigns.

17.     ASSIGNMENT. This Guaranty is assignable by Lender without notice to or consent of Guarantor, and any assignment hereof by Lender shall operate to vest in such assignee all rights and powers herein conferred upon and granted to Lender. Assignment or transfer of the indebtedness guaranteed hereby shall automatically assign this Guaranty whether or not the Guaranty is expressly referred to in the transfer or assignment and without necessity of an express assignment.

18.     RELIANCE. Guarantor acknowledges that the Lender is relying upon Guarantor's covenants herein in entering into the Loan transaction with the Borrower, and undertakes to perform its obligations hereunder promptly and in good faith.

1263824_1.DOC                                    - 5 -

19.   SEVERABILITY.   Should any one or more of the provisions of this Guaranty be determined to be illegal or unenforceable as to one or more of the parties, all other provisions, nevertheless, shall remain effective and binding on the parties hereto.

20.   NON-WAIVER.   No delay or failure on the part of the Lender to exercise any right or remedy to which Lender may be entitled shall operate as a waiver of any of Lender's rights under this Guaranty and no single or partial exercise by the Lender of any right or remedy hereunder shall preclude other or further exercise thereof or the exercise of any other right or remedy to which Lender may be entitled.

21.   ATTORNEY FEES.   Guarantor agrees to pay Lender's reasonable attorneys' fees, paralegal fees, court costs and other expenses incurred in enforcing Lender's rights hereunder, whether suit be brought or not, including but not limited to those incurred in connection with court proceedings at trial and appellate levels, including without limitation, bankruptcy and probate proceedings.

22.   NON-TRANSFER OF MEMBERSHIP INTEREST.   Guarantor agrees to retain the current percentage of membership interest in Borrower presently owned by him and not to transfer, hypothecate, encumber, pledge, or sell any membership interest in Borrower to any other person or entity without the prior express written consent of Lender.

23.   FACSIMILE COUNTERPARTS.   An executed facsimile copy shall be an acceptable form of acceptance of this Guaranty. This Guaranty may be executed by the parties hereto individually or in combination, in one or more counterparts, each of which shall be an original and all of which will constitute one and the same Guaranty.

24.   WAIVER OF JURY TRIAL.   AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, LENDER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE GUARANTEED INDEBTEDNESS, THE LOAN AND ALL DOCUMENTS AND AGREEMENTS EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THE GUARANTEED INDEBTEDNESS, THE LOAN, OR WITH RESPECT TO ANY CLAIMS OR DEFENSES ALLEGED TO ARISE OUT OF THE COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

_____
NARENDRA PATEL

_____
JYOTSNA PATEL

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 13ᵗʰ day of November, 2008, by Narendra Patel and Jyotsna Patel, his wife. They *(check one)* ☐ are personally known to me, or ☑ produced valid driver's licenses as identification.

Notary Public, State and County Aforesaid
Name:_____Vicki L. Cross
My Commission Expires: Commission # DD376165
My Commission Number: Expires January 21, 2009
Bonded Troy Fain · Insurance, Inc. 800-355-7019

1263824_1.DOC

- 7 -